# United States Court of Appeals
## For the First Circuit

No. 01-1108

JOHN F. CURRIE,

Petitioner, Appellant,

v.

JAMES MATESANZ, ET AL.,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lipez, Circuit Judge.

Barry S. Pollack, with whom Amber R. Anderson and Dechert
Price & Rhoads were on brief, for appellant.

Cathryn A. Neaves, Assistant Massachusetts Attorney General,
with whom Thomas F. Reilly, Massachusetts Attorney General, was on
brief, for appellees.

February 19, 2002

**LIPEZ, Circuit Judge**. This case requires us to determine whether an application for state post-conviction relief was "pending" for purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, state prisoners seeking federal habeas corpus review generally must file a petition under 28 U.S.C. § 2254 within one year of the date on which their state convictions became final. See 28 U.S.C. § 2244(d)(1). Before pursuing relief in the federal courts, however, state prisoners first must exhaust all available state post-conviction remedies. See 28 U.S.C. § 2254(b)(1). Recognizing the potential conflict between AEDPA's exhaustion requirement and its one-year statute of limitations, Congress provided that "[t]he time during which a properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2).

Appellant John Currie seeks federal habeas review of his state conviction on grounds of ineffective assistance of counsel. The timeliness of his § 2254 petition depends on whether his earlier application for state post-conviction review was "pending" during the nine-month gap between disposition in the trial court and Currie's motion for leave to appeal. The district court concluded that it was not, and dismissed Currie's § 2254 petition as barred by AEDPA's statute of limitations. We review the district court's interpretation of the statute de novo. United States v. Michaud, 243 F.3d 84, 85-86 (1st Cir. 2001). We now join

-2-

our sister circuits in holding that an application for post-conviction relief is pending "from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999), aff'd on other grounds, 531 U.S. 4 (2000). Accordingly, we vacate the judgment of the district court.

## I.

In 1981, a Massachusetts jury convicted Currie of first degree murder, based on his role in an attempted robbery that ended in the death of a state police officer. Massachusetts law provides for direct and "extremely broad plenary review" by the Supreme Judicial Court ("SJC") in such cases, Trigones v. Attorney General, 652 N.E.2d 893, 895 (Mass. 1995), which are classified as "capital." See Mass. Gen. Laws ch. 278, § 33E. On direct appeal, the SJC is authorized to order a new trial or enter other appropriate relief if it concludes that the "verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require." Id.

If the SJC affirms a capital conviction on direct appeal -- as it did in Currie's case -- post-conviction review is circumscribed. In particular, § 33E strictly limits appellate review of any motion for a new trial filed after the SJC's decision on direct appeal in a capital case. If such a motion is denied by the trial court, the petitioner must apply to a single "gatekeeper" justice of the SJC for leave to appeal to that court, and "no

appeal shall lie . . . unless the appeal is allowed by a single justice . . . on the ground that it presents a new and substantial question which ought to be determined by the full court." Id. Section 33E does not specify a time limit for filing a petition for leave to appeal, and during the relevant time period the prevailing rule was that capital prisoners could apply to the gatekeeper justice at any time. See id.; Mains v. Commonwealth, 739 N.E.2d 1125, 1130 n.10 (Mass. 2000). The SJC since has held that such prisoners must seek leave to appeal within 30 days of the trial court's judgment. However, it made clear that its new rule applied only prospectively. Mains, 739 N.E.2d at 1130 n.10 ("Hereinafter, in the interests of consistency and finality, we shall require that a gatekeeper petition pursuant to G.L. c. 278, § 33E, be filed within thirty days of the denial of a motion for a new trial.").

Currie filed his first motion for a new trial in 1988, some five years after the SJC affirmed his conviction on direct appeal. Proceeding pro se, he argued that the trial court impermissibly restricted the jury's consideration of evidence that Currie was intoxicated at the time of the robbery. The Superior Court denied the motion on the ground that Currie's claims were available at trial and on direct appeal, and so were deemed waived. See Commonwealth v. Festa, 447 N.E.2d 1, 3 (Mass. 1983) (explaining that issues not raised at trial or on direct appeal are waived for purposes of post-conviction review).

Currie applied to a single justice of the SJC for leave to appeal the trial court's ruling. He also requested that counsel

-4-

be appointed to assist him on appeal, and the court granted that request.  Rather than pursue Currie's application for leave to appeal, however, his new counsel filed an amended motion for a new trial in the Superior Court.  The amended motion asserted three new grounds for relief, all of which alleged violations of Currie's right to effective assistance of trial and appellate counsel.  The Superior Court rejected the motion on its merits, and again Currie sought leave to appeal from the gatekeeper justice.  Following briefing and argument, the application was denied in May of 1991.

Congress enacted AEDPA in 1996, amending the procedures governing federal habeas corpus review.  Under AEDPA, § 2254 petitions for federal review of state convictions allegedly imposed in violation of the Constitution or federal law are subject to a one-year statute of limitations that typically runs from the date the petitioner's conviction became final.  28 U.S.C. § 2244(d)(1).[1]

---

[1] Section 2244(d)(1) provides, in relevant part:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
    (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered

For prisoners like Currie, whose state convictions became final before AEDPA was passed, the limitations period commenced on AEDPA's effective date, April 24, 1996. Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999). Thus, absent tolling, Currie had until April 24, 1997, to file a petition under § 2254. Id.

In the wake of AEDPA, Currie set about preparing a petition for federal review, focusing on the three allegations of ineffective assistance of counsel raised in his first amended new trial motion. In the course of his research, however, Currie discovered a new claim that he had not previously presented to the state courts: that his jailhouse confession was obtained by coercion, in violation of the Fifth Amendment. Under AEDPA, Currie could not seek federal relief on the basis of that claim unless he first "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).[2]

Accordingly, on April 3, 1997, Currie (again proceeding pro se) filed a second motion for a new trial, arguing that both trial and appellate counsel erred in not adequately challenging the trial judge's admission of the confession. Then, on April 18, 1997, he filed a § 2254 petition, raising the issues of ineffective assistance of counsel set out in his first amended new trial motion, as well as the new issue raised in the second new trial

through the exercise of due diligence.

[2] Section 2254(c) explains that, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."

-6-

motion. Currie acknowledged that his second new trial motion was still pending in the Massachusetts Superior Court, and requested that the federal district court stay his § 2254 petition until the Superior Court acted on the motion. The district court refused, citing the absence of any "provision in the statutes or caselaw for the stay of an unexhausted petition pending exhaustion." Currie v. Matesanz, No. 97-11004-GAO (D. Mass. July 24, 1997). On July 24, 1997, the district court dismissed Currie's § 2254 petition without prejudice. Id.

The Superior Court denied Currie's second new trial motion on October 9, 1997, on the ground that Currie could have raised the issues in his earlier motion. After some procedural missteps,[3] Currie wrote to the clerk of the SJC seeking advice on how and when to appeal the trial court's judgment. The clerk informed him that he could apply to a single justice of the SJC for leave to appeal, and that there was no time limit for such an application.

On July 6, 1998 -- roughly nine months after the Superior Court's denial of his second new trial motion -- Currie filed an application with a single justice of the SJC, seeking leave to appeal the Superior Court's ruling.[4] The application was denied on

_____

[3] Currie first filed a notice of appeal in the Massachusetts Appeals Court. As explained above, however, in a capital case the proper procedure for appeal under § 33E is to apply for leave to appeal from a single justice of the SJC. If leave is granted, the appeal is heard by the SJC, not the Appeals Court. Mass. Gen. Laws ch. 278, § 33E.

[4] There is some confusion over when, exactly, Currie's application was filed. The magistrate judge's recommendation

March 24, 1999.  Five days later, on March 29, 1999, Currie filed the instant petition under § 2254, raising essentially the same claims as were set out in the earlier petition that was dismissed without prejudice.

The Commonwealth moved to dismiss the petition as untimely.[5]  The magistrate judge agreed, and issued a report and recommendation concluding that Currie's § 2254 petition was barred by AEDPA's one-year statute of limitations.  The magistrate judge treated Currie's July 6, 1998, application for leave to appeal to the SJC as a separate "application" for post-conviction review rather than as a continuation of the earlier proceedings on his second new trial motion.  Since that application "was not <u>filed</u>, properly or otherwise, until [July] 6, 1998," the magistrate judge reasoned, it could not possibly have been "pending" before that date.  Thus, the statute of limitations was tolled while Currie's new trial motion was pending before the Superior Court -- from April 3, 1997, to October 9, 1997 -- and again while the application for leave to appeal was pending before the SJC -- from

_____

states that the application was filed on January 6, 1998.  That appears to be a typographical error, however, as Currie himself dated the application July 6, 1998.  The SJC's docket indicates that the application was filed in that court on August 4, 1998. The choice of one date over another is irrelevant to the statute of limitations question in this case.  For the sake of clarity, we proceed as if July 6, 1998, were the correct date.  In so doing, we mean to express no view as to whether the so-called "mailbox rule," which holds that a pro se prisoner's notice of appeal is deemed "filed" when delivered to prison officials for forwarding to the court clerk, <u>Commonwealth</u> v. <u>Hartsgrove</u>, 553 N.E.2d 1299, 1301-02 (Mass. 1990), applies to § 33E applications.

[5] On Currie's request, the district court appointed counsel to aid him in responding to the Commonwealth's motion.

-8-

July 6, 1998, to March 24, 1999.  "Nothing was pending," however, in the gap between those two proceedings.  Therefore, Currie's § 2254 petition was filed almost ten months late.[6]

The district court accepted the magistrate judge's recommendations, and dismissed Currie's petition as time-barred. The court issued a certificate of appealability, as required by 28 U.S.C. § 2253(c).  This appeal followed.

## II.

Currie's § 2254 petition was filed on March 29, 1999, almost three years after AEDPA's effective date.  However, AEDPA provides that the limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  The Commonwealth concedes that Currie's second new trial motion was "properly filed" in the Massachusetts Superior Court on April 3, 1997.  The operative question,

---

[6] To assist the reader of this opinion, we set forth a chronology of important dates:

| | |
|---|---|
| April 24, 1996: | AEDPA went into effect, and its one-year statute of limitations began to run. |
| April 3, 1997: | Currie filed a second new trial motion in Massachusetts Superior Court. |
| April 18, 1997: | Currie filed his first § 2254 petition. |
| July 24, 1997: | District Court denied Currie's § 2254 petition without prejudice, for failure to exhaust state remedies. |
| October 9, 1997: | Massachusetts Superior Court denied Currie's second new trial motion. |
| July 6, 1998: | Currie sought leave to appeal from gatekeeper justice of SJC. |
| March 24, 1999: | Gatekeeper justice denied leave to appeal. |
| March 29, 1999: | Currie filed the instant § 2254 petition. |

-9-

therefore, is how long that motion was "pending." Currie contends that it was pending until the gatekeeper justice denied his application for leave to appeal on March 24, 1999, thus extinguishing the possibility of appellate review under the governing state procedures. We agree.

**A.**

Every circuit to address the question has held that a properly filed application for state post-conviction review is pending from initial filing in the trial court until final disposition on appeal. See Melancon v. Kaylo, 259 F.3d 401, 406 (5th Cir. 2001); Fernandez v. Sternes, 227 F.3d 977, 980 (7th Cir. 2000); Swartz v. Meyers, 204 F.3d 417, 420 (3d Cir. 2000); Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999), aff'd on other grounds, 531 U.S. 4 (2000); Mills v. Norris, 187 F.3d 881, 883-84 (8th Cir. 1999); Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999); Barnett v. Lemaster, 167 F.3d 1321, 1323 (10th Cir. 1999). Thus, the application is "pending," not only when it actually is being considered by the trial or appellate court, but also during the "gap" between the trial court's initial disposition and the petitioner's "timely filing of a petition for review at the next level." Melancon, 259 F.3d at 406.[7]

---

[7] That rule applies to applications for discretionary review as well as to appeals as of right. See, e.g., Swartz, 204 F.3d at 421-24; Taylor, 186 F.3d at 561; Barnett, 167 F.3d at 1323.

We agree that "[i]t is sensible to say that a petition continues to be 'pending' during the period between one court's decision and a timely request for further review by a higher court." Fernandez, 227 F.3d at 980. The common understanding is that "an action or suit is 'pending' from its inception until the rendition of final judgment." Black's Law Dictionary 1134 (6th ed. 1990). A judgment usually does not become "final" until the completion of appellate review or the expiration of time for seeking such review. See 28 U.S.C. § 2244(d)(1) (stating that AEDPA's statute of limitations begins to run when the challenged state judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review"). It follows that an action remains "pending" through the appeals process. See Swartz, 204 F.3d at 420 ("Tolling the period of limitation between the time a state court denies post-conviction relief and the timely appeal or request for allowance of appeal is consistent with the plain meaning of the statutory language . . . .").

That view is consistent with the exhaustion requirement of § 2254(c). The purpose of state remedy exhaustion is to "afford the state courts, which have an equal responsibility with the federal courts to vindicate federal constitutional rights, the first opportunity to remedy a constitutional violation." Dickerson v. Walsh, 750 F.2d 150, 154 (1st Cir. 1984) (citing Fay v. Noia, 372 U.S. 391, 418-19 (1963)). The Supreme Court has held that state courts also must have a "full" opportunity to address constitutional claims. O'Sullivan v. Boerckel, 526 U.S. 838, 845

-11-

(1999). Thus, state prisoners cannot simply present their claims to the state trial court; they must "invoke[] one complete round of the State's established appellate review process." Id.

AEDPA's tolling provision complements the exhaustion requirement "by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued." Duncan v. Walker, 533 U.S. 167, 121 S. Ct. 2120, 2128 (2001); cf. Gaskins, 183 F.3d at 10 ("Applying the tolling provision [during the judicially-crafted grace period for prisoners whose convictions became final before AEDPA's effective date] encourages respect for the principle of comity and compliance with the requirement that, ordinarily, a state prisoner must first exhaust his state court remedies before seeking federal habeas relief."). By interpreting the term "pending" in § 2244(d)(2) to include the time before a timely-filed appeal, we enable state prisoners to "give the state courts [a] full opportunity to resolve any constitutional issues," O'Sullivan, 526 U.S. at 845, without fear of thereby sacrificing the opportunity for federal review. A more restrictive reading, by contrast, "would inevitably lead to the filing of protective federal petitions." Nino, 183 F.3d at 1005; accord Melancon, 259 F.3d at 406 ("If the time between a disposition but before a timely filed appeal is not tolled, a habeas petitioner is likely to file a protective federal petition before he has fully exercised all state appeals if there is a possibility that the right to federal habeas might be extinguished."); Bennett, 199 F.3d at 119 (observing that contrary

rule would "force appellants into federal court prematurely").  In short, tolling the statute of limitations during the gap between initial disposition and appeal not only "furthers principles of comity by giving state appellate courts full opportunity to review state prisoners' federal constitutional claims, [but also] lightens the dockets of federal courts by avoiding the need for state prisoners to file protective federal petitions before uncertain state appellate procedures have been exhausted." Mills, 187 F.3d at 884.

Here, Currie followed the procedures set forth in Mass. Gen. Laws ch. 278, § 33E, for capital prisoners seeking to appeal a denial of post-conviction review.  This case, therefore, falls within the rule that an application for post-conviction relief is pending from the time it first is filed with the state trial court, until the final disposition of a timely appeal or request for allowance of appeal.[8]  Accordingly, Currie's second new trial motion was pending throughout the nine-month "gap" between the Superior Court's judgment and the single justice's decision to deny his application for leave to appeal.

**B.**

---

[8] We note that most courts have held that an application for state post-conviction relief remains "pending" until the end of the statutorily allotted period for appeal, even if the prisoner does not in fact file an appeal during that period.  See, e.g., Gibson v. Klinger, 232 F.3d 799, 804 (10th Cir. 2000); Williams v. Cain, 217 F.3d 303, 311 n.9 (5th Cir. 2000); Swartz, 204 F.3d at 421-24; Mills, 187 F.3d at 884; Taylor, 186 F.3d at 561; see also Johnson v. McCaughtry, 263 F.3d 559, 563-64 (7th Cir. 2001) (reserving the question, but noting that state had conceded the point).  We express no view as to that question here, since Currie did file a timely application for leave to appeal.

-13-

The Commonwealth does not dispute the general rule we now adopt. Instead, it offers two reasons why we should find that rule inapplicable here. First, the Commonwealth insists that a § 33E application for leave to appeal (and, presumably, any actual appeal to the SJC authorized by the gatekeeper justice) is not an "appeal" at all, but instead is akin to a new collateral proceeding. That argument borders on the frivolous, given that § 33E states that "no appeal shall lie from the decision of [the Superior Court denying a post-conviction motion for a new trial] unless the appeal is allowed by a single justice" of the SJC. Mass. Gen. Laws ch. 278, § 33E (emphasis added). Undaunted by the statutory language, the Commonwealth maintains that § 33E review is not in the nature of an appeal because capital prisoners have no absolute right to appeal, but may do so only if the gatekeeper justice determines that the issue presented in the motion for a new trial is "new and substantial." Id. True enough, but the fact that an appeal is discretionary does not make it something other than an appeal. In order to obtain certiorari review in the United States Supreme Court, for example, a petitioner must convince four Justices that the case involves, at a minimum, "an important federal question." Sup. Ct. R. 10. Similarly, in order to obtain appellate review of a district court's denial of a petition for writ of habeas corpus, the petitioner must convince either the district court or the court of appeals that he or she "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In either case, the appeal must be authorized under a certain standard

-14-

before it can proceed, but no one seriously would suggest that it thereby is converted into a new proceeding rather than an appeal from the judgment below.

Relatedly, the Commonwealth argues that § 33E review is not an "appeal" because an application for leave to appeal is "filed as an original proceeding with the single justice session of the SJC" and "[a]ny records below that a party wishes to be considered are filed by that party" rather than transmitted by the trial court. Those factors suggest, at most, that the "gatekeeper" proceeding before the single justice is not <u>itself</u> an appeal. That is beside the point. In capital cases, an application for leave to appeal is a necessary step toward perfecting a post-conviction appeal to the SJC. It is, therefore, part of the appeal process in precisely the same way that a petition for certiorari is part of the process of any appeal to the Supreme Court, or an application for a certificate of appealability was part of the process in this appeal.[9]

The Commonwealth's second argument has more force. It suggests that the cases discussed above -- which hold that an application for state post-conviction relief remains "pending"

---

[9] The weakness of the Commonwealth's argument is highlighted by its concession that Currie's new trial motion remained "pending" for 30 days after it was rejected by the Superior Court. The Commonwealth does not suggest that a 30-day time limit actually applied to Currie's application for leave to appeal. Rather, noting that the SJC recently adopted such a limit prospectively, see <u>Mains</u>, 739 N.E.2d at 1130 n.10, the Commonwealth deigns to give Currie the "benefit of a 30-day appeal period." However, it makes no sense to permit an "appeal period" if, as the Commonwealth maintains, the procedures set out in § 33E do not constitute an "appeal" in the first place.

-15-

during the appellate process -- are inapposite here because they "all deal with the ordinarily short span of time, usually 30 days, between a lower court's decision and a defendant's right to appeal that decision." The Commonwealth directs our attention to a second set of cases involving <u>untimely</u> appeals. The Fifth, Seventh, and Tenth Circuits have held (with minor variations not relevant here) that an application for post-conviction review ceases to be pending once the statutory period for appeal expires, although it may be "resuscitated" if the state courts agree to hear an untimely appeal. <u>Fernandez</u>, 227 F.3d at 980; <u>accord</u> <u>Melancon</u>, 259 F.3d at 406-07; <u>Gibson</u> v. <u>Klinger</u>, 232 F.3d 799, 804 (10th Cir. 2000). As the Fifth Circuit has explained, "[a]t the point when the state limitations period expired, a petitioner is not entitled to further appellate review and, therefore, he has no application 'pending' in state court. A state court's subsequent decision to allow review may toll the time relating directly to the [appeal], but it does not change the fact that the application was not pending prior to the [appeal]." <u>Melancon</u>, 259 F.3d at 407. Thus, in the case of an untimely appeal, AEDPA's statute of limitations will be tolled from the date on which the application for post-conviction relief is filed in the state trial court until the expiration of time to appeal, and then again from the date on which the untimely appeal is filed, until the appeals court rejects it on the merits. The application is not "pending," however -- and the statute of limitations is not tolled -- during the interval between the end of

the prescribed appeal period and the filing of the untimely appeal.[10]

The Commonwealth maintains that the nine-month gap between judgment and appeal makes this case "far more analogous" to the untimely appeal cases than to those dealing with appeals within a set time limit. We find its analogy unpersuasive. As an initial matter, the Commonwealth's claim that the cases involving timely appeals "all deal with [an] ordinarily short span of time" is incorrect. In Taylor, 186 F.3d at 560-61, for example, the Fourth Circuit held that the petitioner's second "motion for appropriate relief" was pending throughout a 152-day interval between the trial court's decision rejecting the motion and the petitioner's application for writ of certiorari to the Louisiana Supreme Court. And in Bennett, 196 F.3d at 120, the Second Circuit held that the petitioner's motion for post-conviction relief was still pending three years after it was filed. The court explained that the petitioner never had received a copy of a written order denying the motion; therefore, the 30-day appeal period never began to run.

_____

[10] The Ninth Circuit has taken a different approach, holding that whenever a state appellate court reaches the merits of an untimely appeal, the original application for post-conviction relief will be deemed to have been pending from the date it first was filed in the trial court. Saffold v. Newland, 250 F.3d 1262 (9th Cir.), cert. granted, 122 S. Ct. 393 (Oct. 15, 2001). We express no view on the propriety of that approach, or the more narrow stance carved out by the Fifth, Seventh, and Tenth Circuits. As we discuss in more detail below, Currie's application for leave to appeal was timely under the governing state-law procedures. Accordingly, we see no need to weigh in on the developing split on the question of untimely appeals.

Those cases did not turn on the amount of time between initial disposition and appeal, but on the fact that the petitioner made "proper use of state court procedures" in pursuing post-conviction relief in the state appellate courts. Barnett, 167 F.3d at 1323. Likewise, in holding that an application for post-conviction relief is not pending continuously through an untimely appeal, the Fifth, Seventh, and Tenth Circuits focused on the fact that the petitioners in those cases did not comply with the relevant state procedures for review. See Melancon, 259 F.3d at 407; Gibson, 232 F.3d at 806-07; Fernandez, 227 F.3d at 980-81. That emphasis on state procedures "is consistent with Congress's intent to encourage exhaustion of state remedies without allowing petitioners to indefinitely toll the limitations period." Melancon, 259 F.3d at 407. Once the statutory period for appeal expires, the trial court's judgment becomes final, and the petitioner has fully exhausted available state remedies. See Fernandez, 227 F.3d at 981 ("[O]f course a federal court would not dismiss a petition on exhaustion grounds after the state process had come to an end and the time for review had expired."). Thus, no purpose is served by continuing to toll the statute of limitations after the end of the statutory period for appeal.

The Commonwealth attempts to downplay the fact that the cases involving untimely appeals turned on the petitioner's non-compliance with state procedural rules. It argues that Currie's second new trial motion could not possibly have been "pending" throughout the nine-month period when, to all appearances, he was

-18-

not doing anything to pursue an appeal. At first blush, that argument seems sensible; after all, "a petitioner who is not actually in the legitimate process of appealing is not 'attempting to exhaust state court remedies.'" Melancon, 259 F.3d at 406 (quoting Gibson, 232 F.3d at 806). However, it may not always be obvious whether a petitioner was or was not "in the legitimate process of appealing" at any given moment. It seems doubtful that Congress intended AEDPA's statute of limitations to turn on evidence that the petitioner spent a certain number of hours each day, week, or month researching the law, drafting motions, and so on. A rule that tied the definition of "pending" in § 2244(d)(2) to the time during which the petitioner in fact was actively pursuing an appeal could well prove unworkable.

Accordingly, courts must be able to presume that, throughout a certain time period, the petitioner is "in the legitimate process of appealing." The difficult question is how much time is "enough" for any given appeal. Rather than adopt arbitrary time limits of our own invention, it would seem reasonable to rely on those prescribed by the state in the first instance. See Gibson, 232 F.3d at 804 ("At any time during a statutory grace period, a petitioner may file an appeal; we therefore presume he is 'attempting, through proper use of state court procedures,' to seek an appeal during this time."). The line must be drawn somewhere, and -- given the lack of any principled basis for choosing one time limit or another -- we see "no reason to second-guess state legislatures' decisions regarding the

disposition of state applications for post-conviction or other collateral review." Villegas v. Johnson, 184 F.3d 467, 471 (5th Cir. 1999); accord Nino, 183 F.3d at 1007 ("[E]ach state is entitled to formulate its own system of post-conviction relief, and ought to be able to administer that system free of federal interference.").[11]

In sum, the Commonwealth's reliance on cases involving untimely appeals is unavailing. Those cases are based on the same rule we adopt today, and reach a different result precisely because the appeals in question were filed after the statutorily allotted period for review. Here, Currie's only avenue of appeal was through the gatekeeper justice of the SJC. Under the then-applicable state procedures, there was no time limit on such an appeal. Currie's application to the gatekeeper justice, therefore, was timely filed. It follows that his second new trial motion was "pending" from the time he filed it in the Massachusetts Superior Court until the SJC denied leave to appeal, thus extinguishing the possibility of further review.

In so holding, we do not ignore the potential for dilatory behavior, nor do we overlook the important finality

---

[11] As noted, see supra note 9, the Commonwealth asks us to infer a 30-day time limit for Currie's appeal. It emphasizes that the SJC recently adopted just such a limitation for future § 33E applications. See Mains, 739 N.E.2d at 1130 n.10. However, the fact that the SJC has decided to impose a 30-day time limit prospectively serves only to highlight the point that no such limit applied to Currie's appeal. See id. (noting "[t]he lack of a time limit under § 33E"). In view of this prospective ruling, it would hardly be appropriate for us to give that rule retroactive effect by holding that Currie's new trial motion remained pending only if he filed his § 33E application within 30 days.

-20-

concerns that underlie AEDPA's statute of limitations. See Brackett v. United States, 270 F.3d 60, 67 (1st Cir. 2001) (noting the "strong concern for finality" evident in cases interpreting §§ 2254 and 2244). We recognize that, until recently, a Massachusetts prisoner who was convicted of capital murder could wait years, even decades, before seeking leave to appeal the denial of a post-conviction motion for a new trial. Once leave to appeal was denied by the gatekeeper justice, the prisoner could file a petition for federal review under § 2254 and argue successfully that the new trial motion had been pending throughout all those years. In this fashion, capital prisoners could circumvent AEDPA's one-year statute of limitations.

Without minimizing the losses in finality that could result from such behavior, we do not believe the risk of abuse should drive our decision here. First and foremost, it would be strikingly unfair to impose a new and arbitrary time limit on Currie, who complied fully with the then-governing state procedural rules. More generally, we are reluctant to adopt one rule to govern capital prisoners proceeding under § 33E, and another to apply in cases where the legislature chose to put a time limit on appeals to the highest state court. Although the notion that there must be some time limit for prisoners like Currie is not without force, it is outweighed by the need for a uniform, predictable rule. Rather than inventing a new time limit, we have chosen to rely on the state's own procedural rules in determining how long an application for post-conviction review is "pending." We will not

depart from that general rule here simply because Massachusetts chose to forego any time limit on § 33E applications to the gatekeeper justice of the SJC.

Finally, under current law there is a 30-day time limit for applications for leave to appeal under § 33E. See Mains, 739 N.E.2d at 1130 n.10. Thus, the finality concerns are limited to a relatively small subset of petitioners: Massachusetts state prisoners who were convicted of first degree murder and whose new trial motions had been denied, but not appealed, when the SJC imposed the new 30-day limit in December, 2000.[12]

**III.**

In light of our conclusion that Currie's second new trial motion was pending throughout the nine-month "gap" that preceded his application for leave to appeal, we need not consider his argument that the doctrine of equitable tolling rescues his § 2254

---

[12] We note that Massachusetts appears to have been alone -- at least within this Circuit -- in its decision to impose no time limit on a certain class of appeals from the denial of post-conviction relief. See Me. Rev. Stat. Ann. tit. 15, § 2131; Me. R. Crim. P. 76(c) (notice of appeal must be filed within 20 days of Superior Court's denial of post-conviction relief); N.H. Sup. Ct. R. 7(1) (notice of appeal to Supreme Court must be filed within 30 days of written notice of lower court's "decision on the merits," including denial of habeas corpus relief); P.R. R. Crim. P. 192.1 (appeal from denial of post-conviction relief made by way of petition for certiorari); P.R. R. Crim. P. 193 (petition for certiorari must be filed within 30 days after judgment is rendered); R.I. Gen. Laws Ann. § 10-9-22 (no appeal from Superior Court's denial of habeas corpus relief, but prisoner may file new petition in Supreme Court). We have not attempted to identify the rules throughout the rest of the country.

petition from AEDPA's time bar.[13]  Based on the tolling mechanism described in § 2244(d)(2), Currie's petition was timely filed. When he filed his second motion for a new trial on April 3, 1997, 21 days remained in AEDPA's one-year limitations period.  The statute of limitations then was tolled until the single justice of the SJC denied Currie's application for leave to appeal on March 24, 1999.  Currie filed his § 2254 petition five days later, leaving 16 days to spare.

**Vacated and remanded.**

---

[13] Currie also argues that his second § 2254 petition "related back" to his first petition, filed on April 18, 1997.  That argument was foreclosed by our recent decision in <u>Neverson</u> v. <u>Bissonette</u>, 261 F.3d 120 (1st Cir. 2001), which held that a second § 2254 petition does not relate back to an earlier, timely petition that was dismissed without prejudice for failure to exhaust state remedies.