**Lane T. MELE, Petitioner, Appellant,**

v.

**FITCHBURG DISTRICT COURT, et al.,
Respondents, Appellees.**

No. 88–1019.

United States Court of Appeals,
First Circuit.

Heard March 9, 1988.

Decided June 15, 1988.

Robert A. Falk with whom Henry F. Owens III and Owens & Associates, Boston, Mass., were on brief, for petitioner, appellant.

Marc C. Laredo, Asst. Atty. Gen., Criminal Bureau, with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief, for respondents, appellees.

Before COFFIN, Circuit Judge, WISDOM,* Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

In 1982, petitioner-appellant Lane T. Mele was involved in an automobile accident which took a human life. He was charged with negligent homicide. The following March, he admitted the sufficiency of the facts and was found guilty by a judge in the Gardner District Court (a Massachusetts state court). Mele received a two year suspended sentence and a like period of probation, with compulsory community service. He appealed. On July 11, 1985, after the probationary period was over, the Massachusetts Appeals Court (MAC) vacated the judgment of conviction and ordered retrial before the jury-of-six session in Fitchburg District Court. *Commonwealth v. Mele*, 20 Mass.App.Ct. 958, 480 N.E.2d 647 (1985).

In the jury trial which ensued, petitioner was again convicted of negligent homicide. The judge—not the same one who had presided at Mele's earlier (bench) trial—sentenced him to thirty months in jail and a like period of probation. The judge credited petitioner for the two years "served" on the original sentence, but ordered that, as to the "remaining" six months, he was to serve twenty days in a penal institution. The balance was suspended.

Mele appealed once again. This time, the MAC affirmed by way of an unpublished memorandum and order. *See Commonwealth v. Mele*, 24 Mass.App.Ct. 1101, 506 N.E.2d 186 (1987). Petitioner then applied to the Massachusetts Supreme Judicial Court (SJC) for further appellate review. His application was summarily denied. *Commonwealth v. Mele*, 400 Mass. 1101, 508 N.E.2d 620 (1987). Undeterred, Mele filed for habeas review in the United States District Court for the District of Massachusetts. *See* 28 U.S.C. §§ 2241–54. He named as respondents the Fitchburg District Court and the Worcester County sheriff. In his habeas application, he reversed an earlier tactical decision. We explain briefly.

In appealing to the MAC from the judgment in the jury-of-six session, petitioner raised four points. Three pertained to rulings made during trial, the particulars of which need not concern us. The final ground had a constitutional dimension: Mele asserted that the imposition of a more severe sentence upon retrial, following as it did his successful appeal of his March 1983 conviction, trammelled his right to due process and amounted to double jeopardy. Yet after the MAC ruled, Mele apparently

* Of the Fifth Circuit, sitting by designation.

dropped the constitutional challenges. In presenting his request for further appellate consideration to the SJC, he explicitly sought review of the alleged trial errors—nothing more. And after the SJC declined to take cognizance of the appeal, petitioner made no effort to obtain collateral consideration of the constitutional issues in the Massachusetts courts.[1]

Petitioner's federal habeas application, however, took up the constitutional cudgels anew. The main basis for relief was the claim that imposition of a more severe sentence following both reversal of Mele's first conviction and expiration of the original sentence, transgressed his constitutional rights.[2] Respondents moved to dismiss. They averred, first, that petitioner's failure to exhaust the constitutional issues in the state courts barred prosecution of the petition; and second, that in any event, the state court proceedings were constitutionally salubrious. Eventually the district judge granted respondents' motion from the bench. *Mele v. Fitchburg District Court*, Cr. No. 87–1656 (D.Mass. Dec. 2, 1987) (*ore tenus* decision). Although we have not been provided with a transcript, it appears from the pertinent docket entry that the judge considered Mele to "ha[ve] exhausted his state remedies," but ruled against him on the merits. Because we find nonexhaustion and no applicable exception, we affirm the dismissal without reaching petitioner's core contentions.

## I

We start with bedrock: "under our federal system, the federal and state 'courts [are] equally bound to guard and protect rights secured by the Constitution.'" *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982) (quoting *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886)). Long ago, the Court concluded that a federal court

should not consider questions posed in a habeas petition until the "power of the highest state court in respect of such questions" has been exhausted. *United States ex rel. Kennedy v. Tyler*, 269 U.S. 13, 17, 46 S.Ct. 1, 2, 70 L.Ed. 138 (1925). *See also Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886). When Congress adopted the federal habeas statute in 1948, it codified this prudential principle:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The exhaustion principle ensures that state courts have the first opportunity to correct their own constitutional errors. *Duckworth v. Serrano*, 454 U.S. 1, 2, 102 S.Ct. 18, 18, 70 L.Ed.2d 1 (1981) (per curiam); *Martens v. Shannon*, 836 F.2d 715, 718 (1st Cir.1988); *Casale v. Fair*, 833 F.2d 386, 391 (1st Cir.1987). The principle enables us to accord appropriate respect to the sovereignty of the states in our federal system, and promotes comity by "minimiz[ing] friction between our federal and state systems of justice." *Rose v. Lundy*, 455 U.S. at 518, 102 S.Ct. at 1203 (quoting *Duckworth*, 454 U.S. at 3, 102 S.Ct. at 19).

Comity, of course, knows some rational bounds. The precept, for example, does

---

1. The papers reflect that, on June 10, 1987, petitioner entered a motion for new trial pursuant to Mass.R.Crim.P. 30(b) in the Fitchburg District Court. The motion, which was premised on allegations of newly-discovered evidence, was denied. Insofar as we can ascertain,

an appeal therefrom is pending in the state courts.

2. The habeas petition originally included an evidentiary ground along with the double jeopardy and due process arguments, but Mele amended it to delete the former.

not require a habeas petitioner to exhaust every possible state procedure before bringing a claim to federal court. *See Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). But the applicant is at risk to present the state courts with a fair opportunity to confront and correct an alleged infirmity. *Id.* at 277–78, 92 S.Ct. at 513–14; *Martens*, 836 F.2d at 717–18; *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir.1987). It is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present—or do his best to present—the issue to the state's highest tribunal. *Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir.1986); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982), *cert. denied*, 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983); *Franklin v. Wyrick*, 529 F.2d 79, 81 (8th Cir.), *cert. denied*, 425 U.S. 962, 96 S.Ct. 1747, 48 L.Ed.2d 208 (1976).

In this case, Mele raised his constitutional objections before the MAC. To preserve them for federal habeas scrutiny, he was obliged to try to bring them before the SJC. He seemingly did not do so. Yet Mele argues that, while he did not advance the constitutional challenges in so many words before the SJC, the court had enough of an opportunity to address the questions to permit him to move to a federal forum. This thesis requires us, in effect, to map the contours of the exhaustion "opportunity" which must be accorded to the state's highest tribunal, given prevailing Massachusetts appellate practice. Our search for a solution to this absorbing tangram leads us, inevitably, into the byways of the appeals process.

## II

Though the SJC and the MAC have concurrent jurisdiction in many areas, and direct review in the SJC may be sought in certain cases, *see* Mass.Gen.Laws c. 211A, § 10, the usual appellate route in virtually all criminal matters leads first to the MAC. *See id.* Once the MAC has resolved a case, the losing party may seek further appellate review in the SJC, Mass.Gen.Laws c. 211A, § 11, but the SJC can, generally speaking, accept or decline the proffer, as it chooses. Such discretionary review is granted only if three (or more) of the justices order it for substantial reasons affecting either the public interest or the interests of justice. *Id.*[3] It is this discretion which Mele sought unsuccessfully to invoke after the MAC had rebuffed his appeal from the jury-of-six conviction.

By rule of court, petitioner was required to follow a set procedure when he tried to interest the SJC in taking his case. Rule 27.1(b) of the Massachusetts Rules of Appellate Procedure limns the contents of an application for leave to obtain further appellate review (ALOFAR). The rule states in pertinent part:

> The application for leave to obtain further appellate review shall contain, in the following order: (1) a request for leave to obtain further appellate review; (2) a statement of prior proceedings in the case; (3) a short statement of facts relevant to the appeal (but facts correctly stated in the opinion, if any, of the Appeals Court shall not be restated); (4) a statement of the points with respect to which further appellate review of the decision of the Appeals Court is sought; and (5) a brief statement (covering not more than ten pages of typing), including appropriate authorities, indicating why further appellate review is appropriate. A copy of the rescript and opinion, if any, of the Appeals Court shall be appended to the application.

Mass.R.App.P. 27.1(b). In this instance, Mele's ALOFAR did not mention the constitutional issues in his statement of points,

---

3. Further appellate review of certain rulings may be obtained if a majority of the justices of the MAC or a majority of those who participated in the decision of the case certify that the public interest or the interests of justice make desirable a disposition by the SJC en banc. Mass. Gen.Laws c. 211A, § 11(a). There is nothing in the record of Mele's case to indicate that the judges of the MAC were requested to make such a certification. We are therefore spared from considering what implications, if any, utilization of this procedure might have on the issue of exhaustion, and we express no opinion thereon.

nor did it allude to those issues in explaining why further appellate review was appropriate.

Petitioner argues that, despite the mandatory phraseology of the rule, an ALOFAR "fairly presents" to the SJC *any* issue on which the MAC has passed, notwithstanding the applicant's declination to list it as a point to be considered. He relies for this somewhat startling proposition on *Commonwealth v. Burno*, 396 Mass. 622, 487 N.E.2d 1366 (1986). We turn, then, to *Burno* and to the argument which petitioner constructs on its foundation.

In *Burno*, the SJC stated: "Unless we direct otherwise in [the] order granting an [ALOFAR], all issues that were before the Appeals Court are before this court, including issues not addressed in the application." *Id.* 487 N.E.2d at 1368; *accord Commonwealth v. Shea*, 398 Mass. 264, 265, 496 N.E.2d 631, 632 (1986); *Vertentes v. Barletta Co.*, 392 Mass. 165, 166 n. 2, 466 N.E.2d 500, 501 n. 2 (1984); *Commonwealth v. Souza*, 390 Mass. 813, 815 n. 1, 461 N.E.2d 166, 168 n. 1 (1984). The theory which Mele spins from this strand starts with the premise—unarguable in light of *Burno*—that, upon granting further review, the SJC, if it chooses to do so, may pass on any issue which was before the MAC whether or not any litigant requested further review on that issue. From this premise, petitioner essays a quantum leap: he exhorts that, upon the mere receipt of an ALOFAR, the SJC is effectively presented with a chance to consider all of the issues which were raised below. Thus, whether or not further review is requested on a particular question, an ALOFAR affords the SJC a "fair opportunity" to rule on any issue which had been contested in the intermediate appeals court. This construct, although intuitively seductive, fails for two reasons.

The most fundamental flaw in petitioner's argument is that it misapprehends the nature of the line of cases exemplified by *Burno*. By its terms, *Burno* stands for nothing more than the proposition that the SJC, after it assumes jurisdiction over a matter (*i.e.*, "grants review"), may in its discretion consider issues contained in the record but not urged by a party on appeal (*i.e.*, not included in the ALOFAR). Even if the SJC has the inherent power to exercise similar discretion in the screening process (*i.e.*, upon initial consideration of an ALOFAR), *Burno* does not *obligate* the SJC to look beneath the surface of the ALOFAR in every case. Nor does *Burno* presume, generally, to relieve an applicant of the customary burden of staking out the bounds of his displeasure with a judicial decision. *Cf.* Mass.R.App.P. 16(a)(4)(B) ("appellate court need not pass upon questions or issues not argued in the brief"); *Commonwealth v. Brown*, 394 Mass. 394, 398, 476 N.E.2d 184 (1985) (issues not raised in MAC deemed waived on further review).[4] Unless the ALOFAR purports to question a ruling below, the SJC has little reason to suspect the presence of an issue ripe for its consideration.

It stands to reason that, at least in ordinary circumstances, the court should be able safely to assume that substantial issues arising from a decision of the MAC will be brought to its attention by the parties seeking review. *See, e.g., Commonwealth v. Elder*, 389 Mass. 743, 747 n. 9, 452 N.E.2d 1104, 1108 n. 9 (1983) (failure adequately to address an issue on appeal "constitutes a waiver" of the ground). Put another way, if no litigant assigns error to a ruling on an issue, the SJC is fully justified in assuming that the parties have no

4. We need not decide whether petitioner's failure to raise the constitutional issues before the SJC constitutes an appellate waiver. Exhaustion and appellate waiver may be related theories. *See Dyer v. Ponte*, 749 F.2d 84, 87 n. 2 (1st Cir.1984) (discussing appellate waiver as independent state procedural ground barring review); *Grieco v. Hall*, 487 F.Supp. 1193, 1199 (D.Mass.1980) (ground argued in application for further appellate review but not argued to MAC was waived; SJC's declination of review did not exhaust state remedies), *aff'd*, 641 F.2d 1029 (1st Cir.1981). Nevertheless, the relatives are not identical twins. The exhaustion inquiry centers on whether the state court had a fair opportunity to consider the alleged errors. Appellate waiver, on the other hand, focuses on whether a litigant, by his own (in)actions, has relinquished rights he would otherwise have possessed.

quarrel with the MAC's disposition of it; and if the justices of the MAC do not certify the issue, *see supra* note 3, the SJC can safely assume that no such unmentioned issue substantially affects the interests of justice or the public interest.

Were we to accept petitioner's reading of *Burno* we would be standing the usual principles which underbrace appellate review on their head and, in the bargain, extending an invitation to replace order with chaos. We would by such fiat impose upon the SJC, in deciding to accept or reject ALOFARs, the necessity to scour the whole of the record below for potential error beyond that called to the court's attention by the applicant. The very purpose which Rule 27.1(b) was designed to serve—conserving scarce judicial resources and simplifying the judicial task by focusing the court's attention on clearly-delineated, concisely-described issues—would be frustrated and the rule itself rendered meaningless. This, in turn, would place an intolerable burden upon the SJC—transforming the process of picking and choosing which cases to hear from a structured exercise into a time-consuming free-for-all, with little hope of realizing any (commensurate) offsetting benefit. The primary burden of identifying the issues presented by an appeal must remain with the appellant. A court, unaided by the parties, ought not be expected "to ferret out ... evanescent needle[s] from ... outsized paper haystack[s]." *Rivera–Gomez v. Adolfo de Castro*, 843 F.2d 631, 635 (1st Cir.1988).

This precept has particular force in a case such as this where, unlike in *Burno*, the SJC denied the ALOFAR. In the normal course of events, the court would never have received the appellate briefs filed with the MAC or any other documents advancing the parties' arguments on the constitutional issues. Although Rule 27.1(f) specifies that, unless a request to file supplemental briefs is granted, "cases in which further appellate review has been granted shall be argued on the briefs and appendix filed in the Appeals Court," the decision to grant or deny an application ordinarily is made solely on the basis of the ALOFAR itself. Under the SJC's practice as we understand it, the court receives the papers and briefs from the lower court only if—and *after*—it grants an ALOFAR. *See* Mass.R.App.P. 27.1(e) (when further appellate review granted, "clerk shall forthwith transmit to the ... SJC all papers theretofore filed in the case"). This procedural paradigm, we think, bolsters our conclusion that the onus must be on the applicant to establish the reasons for granting further review. The SJC cannot be presumed to have a duty to look for a needle in a paper haystack—let alone a haystack located in someone else's barn.

To counter this argument, petitioner points out that the filing of the ALOFAR brings with it the MAC opinion. That is so. And in a certain sense, the SJC may thereby be alerted to the existence of issues not included in the application. But the argument cannot carry the heavy cargo which Mele assigns to it. For one thing, the MAC opinion is appended to the ALOFAR not for independent study, but so that the SJC may weigh the arguments for reversal or modification *contained in the ALOFAR* against the MAC's rationale *on those issues.* Moreover, the opinion often reflects a particular viewpoint. Appellate opinions, as a rule, do not comprehensively marshal the arguments for and against a particular resolution of an issue—an exercise reserved primarily for the parties' briefs. In the typical case, the opinion sets out the rationale for the outcome. It follows that an issue cannot be said to have been "fairly presented" if the court is not given an opportunity to consider arguments on both sides of it. Indeed, that concept is at the root of our adversarial system of justice.

There is another, equally compelling, reason why mere exposure to the MAC's opinion, without more, does not serve the desired purpose. An appellate court is entitled to assume that the parties are content with rulings to which no objection is timely noted and preserved. *Cf., e.g.,* Fed.R. Civ.P. 51 (party cannot assign error to jury instruction unless he has "stat[ed] distinctly the matter objected to and the grounds of the objection" in a timely fashion); Fed. R.Evid. 103(a) (requiring timely objection

or offer of proof to preserve claims of error with respect to evidentiary rulings). To expect the SJC to go over each and every opinion of the MAC with a fine tooth comb, in an unremitting search for errors that the parties have neglected to pursue, invites the same parade of horrors to which we have just alluded. We think such an expectation unwise, unworkable, and not sufficiently deferential to the important state role in the adjudicative process.

Lastly, it can be argued that the SJC does not have to expend the enormous amount of time and effort which we fear. The court can simply declare it to be business as usual, decide to take or reject ALOFARs on the basis of the arguments raised, and leave disappointed applicants—like Mele—free to surface issues which were first raised, then disregarded, before a federal habeas tribunal. This position, however, has little to commend it. It encourages forum-shopping in the sense that it permits a litigant to squirrel away an issue in the hope that a different court, called upon to view it *ab initio*, might react more favorably. But basically, the argument cannot be right because it demeans the exhaustion principle; indeed it undercuts the entire rationale for requiring exhaustion. Given the pronouncements of the Supreme Court and the statutory scheme, such an easy evasion cannot be countenanced.

■ In sum, then, we find petitioner's paradigmatic position unconvincing. We hold that an appealed issue cannot be considered as having been fairly presented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners of the ALOFAR. *Cf. Martens,* 836 F.2d at 717 (to satisfy exhaustion requirement, habeas petitioner must have presented issue "face up and squarely" to state court); *Dougan v. Ponte,* 727 F.2d 199, 202 (1st Cir.1984) (no exhaustion where "the most meticulous search on the part of the state court would have turned up nothing suggesting that petitioner was making a federal [constitutional] argument").

### III

This brings us to closer perscrutation of the ALOFAR which Mele filed with the SJC. It discloses no arguable mention, suggestion, clue, hint, or intimation of the constitutional claims. We illustrate the point by parsing it, section by section.

1. In Part I, petitioner describes the travel of the case but makes no reference to the original bench trial in Gardner District Court, the initial sentence, or the successful appeal. Instead, he begins his account with, and traces the movement of his case from, the jury-of-six trial.

2. In Part II, Mele sets forth the facts relevant to the ALOFAR. He rehearses the circumstances surrounding the death of the victim, but that is all. No snippets of the case's procedural history emerge.

3. Part III is of decretory significance. Enumerating the issues on which further review is sought, the document lists three discrete grounds for reversal of the MAC's decision. Each and all of them relate to errors alleged to have occurred in the course of the trial; none possesses the slightest connection to the constitutional grounds which Mele urges upon us.

4. Part IV is petitioner's argument in support of further appellate review. It is divided into three subparts, devoted exclusively to developing ostensible trial errors and corresponding precisely to the issues delineated in Part III. Petitioner makes no explicit constitutional argument, cites no caselaw bearing on the constitutional issues, and eschews reference to the array of procedural facts essential to development of such issues.

■ In short, the body of the ALOFAR was entirely bereft of *any* indication that constitutional issues were ever raised in the proceedings. To be sure, the MAC rescript, appended to the ALOFAR, mentioned the constitutional questions—but there was nothing to suggest that those issues remained live. On such an inscrutable record, we cannot conclude that petitioner presented the SJC with an appropriate opportunity to consider his due process and double jeopardy claims.

## IV

Exhaustion, as we have already noted, is a doctrine based largely on considerations of comity. Strictly speaking, it is rigorous, but not ironclad: "there is a strong presumption in favor of requiring the prisoner to pursue his available state remedies, [but] his failure to do so is not an absolute bar to appellate consideration of his claims." *Granberry v. Greer,* — U.S. —, 107 S.Ct. 1671, 1674, 95 L.Ed.2d 119 (1987); *see also Gagne v. Fair,* 835 F.2d 6, 9 (1st Cir.1987). Yet the established exceptions to the exhaustion requirement are few and far between. *See Gagne,* 835 F.2d at 9–10. In this case, petitioner has not advanced—and seemingly cannot formulate—any plausible rationale suggesting that his case squares with one of the exceptions.

The inapplicability of recognized exceptions requires only fleeting comment. Because respondents have strenuously urged nonexhaustion both in the district court and before us, there has been no "waiver." *See Granberry,* 107 S.Ct. at 1674; *Gagne,* 835 F.2d at 10. Petitioner has not argued that there is a lacuna in Massachusetts' procedural scheme—an utter absence of collateral procedures available in the state courts to permit him to raise his constitutional claims—and we know of none. In this connection, we note that Massachusetts provides a broad panoply of procedures for post-conviction challenges to the validity of criminal sentences. *E.g.,* Mass. R.Crim.P. 30. We are aware of no authority clearly establishing that, in the circumstances, Mele's constitutional claims would be foreclosed on post-conviction attack so that "any effort to obtain relief" would be "futile." *See Gagne,* 835 F.2d at 9 (quoting *Duckworth,* 454 U.S. at 3, 102 S.Ct. at 19). In any event, it would be presumptuous for us to conclude that petitioner is barred from seeking such relief when he has never endeavored to pursue it.[5]

We observe, finally, that petitioner has made no showing of special circumstances such as would demand prompt federal intervention and bring this habeas application within the tiny residuary exception to the exhaustion requirement. *See Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952); *Martens,* 836 F.2d at 718 n. 3; *Gagne,* 835 F.2d at 10. Our independent review of the papers confirms that no such circumstances exist in this instance. Nothing in the record warrants us in upsetting the strong presumption that exhaustion of state remedies must occur before federal habeas review can be triggered. The Supreme Court, after all, has spoken clearly of the obligation of the federal judiciary to maintain a "rigorously enforced total exhaustion rule." *Rose v. Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203.

## V

We need go no further. It is evident to us that petitioner did not present the SJC with a full and fair opportunity to confront the constitutional claims asserted in his federal habeas initiative. Because of that neglect, he runs afoul of the exhaustion requirement. In the absence of any cognizable basis for overturning the heavy presumption that exhaustion must be complete before claims may be considered on federal habeas review, the district court lacked jurisdiction to address the merits of the petition. As we have said before, "the only safe course for a petitioner is explicitly to identify his federal constitutional claims" before the state's highest court. *Dougan,* 727 F.2d at 202.

*The judgment of the district court is affirmed for failure to exhaust state remedies.*

---

5. If petitioner were to attempt to exhaust state remedies and failed to obtain relief at this late date because of a procedural bar, then the availability of federal habeas would depend, as it rightfully should, on whether he could satisfy the familiar "cause" and "prejudice" standard enunciated in *Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977). *See, e.g., Bautista v. McCotter,* 793 F.2d at 111.