# United States Court of Appeals

## For the First Circuit

No. 00-2364

WILLIAM A. BARRESI, II

Petitioner, Appellant,

v.

MICHAEL J. MALONEY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,

and McAuliffe,[*] District Judge.

Kenneth G. Littman for appellant.
Linda A Wagner, Assistant Attorney General, with whom
Thomas F. Reilly, Massachusetts Attorney General, was on brief for
the appellee.

July 23, 2002

---

[*]Of the District of New Hampshire, sitting by designation.

**McAULIFFE**, **District Judge**. William A. Barresi, II, was convicted in Massachusetts of raping a child under sixteen years of age, Mass. Gen. Laws ch. 265, § 22A, and committing an indecent assault and battery on a child under fourteen years of age (the same child), id. § 13B. The Massachusetts Appeals Court affirmed his convictions, Commonwealth v. Barresi, 46 Mass. App. Ct. 907, 705 N.E.2d 639 (1999), and the Massachusetts Supreme Judicial Court ("SJC") denied, without opinion, his Application for Leave to Obtain Further Appellate Review (commonly referred to as an "ALOFAR"). Commonwealth v. Barresi, 429 Mass. 1106, 710 N.E.2d 604 (1999). Pursuant to 28 U.S.C. § 2254, Barresi then petitioned the United States District Court for the District of Massachusetts for habeas corpus relief. The district court dismissed the petition, holding that Barresi had not fairly presented his federal constitutional claims to the SJC and, therefore, had not exhausted available state court remedies. Although the issue is open to reasonable debate, because we conclude that Barresi did adequately present his federal claims, we reverse and remand the habeas petition for consideration on its merits.

I.

Prior to his criminal trial, Barresi filed a motion under the Commonwealth's Rape Shield Law, Mass. Gen. Laws ch. 233, §21B, seeking leave to introduce evidence that his alleged sexual assault victim had tested positive for chlamydia, a sexually transmitted disease. Based upon those positive test results, as well as his own test results, which revealed that he had never been infected

-2-

with any chlamydia organism, Barresi hoped to persuade the jury that he could not have repeatedly raped the complainant and, consequently, that her accusations against him were false.

Barresi also wanted to show that the complainant made up the rape and assault charges to deflect her mother's scorn. According to Barresi, when the young complainant realized her mother was about to discover that she had been sexually active (for perhaps as long as a year) with at least one, and possibly two or more, teenage boys, she fabricated the charges against Barresi to create a plausible diversionary explanation for her sexually transmitted disease. To support that theory of defense, Barresi sought to introduce evidence that the complainant reported the alleged sexual assaults to the police after she had had an argument with her mother, and then ran off to meet with one of the boys with whom she allegedly had an ongoing sexual relationship. Barresi implicitly suggested that at that meeting the two concocted the false rape charges against him, after which the complainant was taken to the police station where she reported the fabricated story to law enforcement officers.

A pretrial hearing was held on Barresi's motion for leave to introduce evidence related to the complainant's sexual history. At that hearing, Barresi presented a physician he intended to call as a medical expert at trial. Although the doctor was able to give a general explanation of chlamydia and its mode of transmission, he conceded that he had never actually treated patients with the disease, and that his understanding of it was based largely upon

information he had gleaned from medical text books. In ruling that Barresi could not introduce the medical expert's testimony at trial, the presiding judge concluded that the doctor lacked sufficient knowledge to give an expert opinion about the incubation period of chlamydia, or the likelihood that a person who had intercourse with an infected partner might contract the disease. The trial judge also concluded that the Massachusetts Rape Shield Law precluded introduction of evidence concerning the complainant's prior sexual conduct with the teenage boy(s), notwithstanding Barresi's asserted intent to introduce that evidence solely to impeach her testimony, and not merely to establish that she was sexually promiscuous. Finally, the trial judge precluded Barresi from introducing testimony from two boys concerning a false accusation of rape the complainant had allegedly leveled against one of them.

Following a three day trial, the jury convicted Barresi on both counts. His appeal to the Massachusetts Appeals Court unambiguously asserted, among other things, that the trial court's refusal to allow him to introduce evidence of the complainant's prior sexual relationship with the teenage boy(s), as well as its refusal to allow testimony from his medical expert, violated his right to confront adverse witnesses, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. While it did not directly address Barresi's federal constitutional claims, the Commonwealth's intermediate appellate court ruled that the trial judge neither abused his discretion nor committed an error of

law in excluding the challenged evidence. Barresi, 705 N.E.2d at 641. Accordingly, Barresi's convictions were affirmed.

Barresi filed a timely ALOFAR with the SJC, the essential thrust of which was that the trial court erred in its interpretation and application of the Massachusetts Rape Shield Law. Barresi did, however, at least allude to the federal constitutional issues he had pressed more forcefully before the intermediate appellate court. The SJC denied Barresi's ALOFAR without opinion.

Barresi then filed a petition for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254, reiterating his claims that the trial court's evidentiary rulings violated his rights under the Sixth and Fourteenth Amendments. The Commonwealth moved to dismiss the petition, arguing that with regard to his federal constitutional claims, Barresi had failed to exhaust the remedies available to him in state court. The district court agreed, holding that because Barresi's ALOFAR did not fairly present his constitutional claims to the SJC, those claims were not exhausted. Therefore, Barresi's habeas petition was dismissed. We subsequently granted Barresi's application for a certificate of appealability, see generally Slack v. McDaniel, 529 U.S. 473 (2000), and this appeal followed.

## II.

The merits of Barresi's habeas petition are not at issue, so we make no comment in that regard. The sole question presented here is a procedural one: whether the federal constitutional claims

-5-

Barresi advances in his habeas petition were fairly and recognizably presented in his appeal to the SJC. That is, we must decide whether Barresi exhausted available state remedies as to those issues. Our review is de novo. See Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997).

Barring certain exceptional circumstances not present here, a habeas petitioner in state custody may not advance his or her constitutional claims in a federal forum unless and until the substance of those claims has been fairly presented to the state's highest court. This exhaustion requirement, codified at 28 U.S.C. §§ 2254(b) and (c), embodies principles of federal-state comity and is designed to provide state courts with an initial "opportunity to pass upon and correct alleged violations of [their] prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (citation and internal quotation marks omitted). The petitioner bears the heavy burden of demonstrating satisfaction of the exhaustion requirement. See Adelson, 131 F.3d at 262; Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir. 1989). To carry that burden, the petitioner must show that "he tendered his federal claim [to the state's highest court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (citations and internal quotation marks omitted).

The Supreme Court has made it clear that a federal claim is not exhausted merely because the facts that underlie it have been previously placed before the state's highest court. See

Picard, 404 U.S. at 277.  Importantly, however, a petitioner need not express his federal claims in precisely the same terms in both the state and federal courts.  See, e.g., id. at 277-78 (holding that the claims advanced by a habeas petitioner before the state's highest court must be the "substantial equivalent" of those raised in his or her federal habeas petition).

We have noted that there are myriad ways in which a petitioner might satisfy his or her obligation to fairly present a federal constitutional issue to a state's highest court.  They include:

> (1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular right specifically guaranteed by the Constitution.

Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987) (citations omitted).  But the list developed in Gagne is merely illustrative; it does not purport to be exhaustive.  So, for example, in Nadworny, we recognized that there "is yet another species of exhaustion which merits attention.  An individual's claim, arising under and asserted in terms of state law, may, as a practical matter, be indistinguishable from one arising under federal law."  872 F.2d at 1099.

It necessarily follows that each case in which a petitioner is alleged to have inadequately presented his or her federal constitutional claims to the state's highest court is both sui generis and fact-driven, turning on its own unique

-7-

circumstances.  See, e.g., Adelson, 131 F.3d at 262 (observing that "our de novo appellate review of a district court's dismissal of a habeas petition for want of exhaustion is necessarily case-specific").  In determining whether a petitioner presented his or her federal claims to the state's highest court "face-up and squarely," Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988), we consider issues of probability - whether it is more likely than not that a reasonable jurist would recognize the constitutional dimensions of the petitioner's claims, given the manner in which those claims were presented.  See Nadworny, 872 F.2d at 1101.

To resolve the question before us, then, we must direct our attention primarily to Barresi's ALOFAR.  See Adelson 131 F.3d at 263 ("[T]he decisive pleading [under Massachusetts practice] is the application for further appellate review, and we must determine whether the petitioner fairly presented the federal claim to the SJC within 'the four corners' of that application.") (quoting Mele v. Fitchburg Dist. Court, 850 F.2d 817, 823 (1st Cir. 1988)).  Nevertheless, while our inquiry must focus on the "four corners" of the ALOFAR, we have never held that appellate review is confined to an examination of that pleading in isolation.  Rather, we have acknowledged that, under certain circumstances, the pleadings and filings submitted by a habeas petitioner to lower state courts (e.g., a motion for new trial or a brief submitted to an intermediate appellate court) provide "a backdrop against which his later filings [must] be viewed."  Scarpa v. DuBois, 38 F.3d 1, 7 (1st Cir. 1994).  In fact, in Scarpa, we explicitly rejected the

proposition that prior circuit precedent restricts the exhaustion inquiry exclusively to an examination of the petitioner's ALOFAR. Id. at 8 n.3.[1]

## III.

Turning to the facts of this case, we are persuaded that, while petitioner certainly could have raised his federal constitutional issues in a more plain and direct manner, his ALOFAR, particularly when read against the "backdrop" of his earlier filings in the intermediate appellate court, was minimally sufficient to apprise the SJC of the continuing federal constitutional dimension of his appeal.

---

[1] At first glance, it might appear that Mele and Scarpa are at odds. In Mele, for example, we observed that, "[u]nder the SJC's practice as we understand it, the court receives the papers and briefs from the lower court only if - and after - it grants an ALOFAR." 850 F.2d at 822. That observation led us to conclude that, at least when the SJC denies an ALOFAR, federal exhaustion review should be limited to the "four corners" of that pleading. Id. at 823. More recently, however, we determined that, notwithstanding the fact that the SJC denied a petitioner's ALOFAR, the federal exhaustion inquiry must not be limited exclusively to an examination of the petitioner's ALOFAR. Scarpa, 38 F.3d at 7. Despite the apparent conflict, Mele and Scarpa are not inconsistent. In cases like Mele, where it is clear that a petitioner has, on appeal to the SJC, abandoned federal constitutional claims advanced before the lower courts, it is entirely appropriate to limit the exhaustion inquiry to the "four corners" of the ALOFAR. If, however, it cannot be said that the petitioner abandoned his or her federal claims on appeal to the SJC, federal exhaustion review includes consideration of the petitioner's lower court filings as a "backdrop" to his or her ALOFAR. Compare Mele, 850 F.2d at 822 (concluding that because the petitioner's ALOFAR did not even mention federal constitutional issues, the "SJC cannot be presumed to have a duty to look for a needle in a paper haystack - let alone a haystack located in someone else's barn"), with Scarpa, 38 F.3d at 7 n.3 (rejecting the State's "crabbed reading" of Mele and its assertion that the court's review must necessarily be limited to the "four corners" of the ALOFAR, since the record revealed that the petitioner had "consistently asserted" his federal constitutional claims).

We begin with Barresi's intermediate appellate brief. In that pleading, Barresi unmistakably argued that the trial court's evidentiary rulings deprived him of rights guaranteed by the Sixth and Fourteenth Amendments. For example, Barresi asserted that "[a] criminal defendant possesses a constitutional right under the Sixth and Fourteenth Amendments to the United States Constitution as well as under Article 12 of the Massachusetts Declaration of Rights to 'confront' adverse witnesses, even where it reveals confidential or privileged information." In support of that proposition, Barresi cited both federal and state precedent. Later in that same brief, he asserted that the trial court's rulings "undermined [his] due process guarantees and destroyed [his] right to present a meaningful defense to these charges. Such a denial of the right of 'confrontation' as guaranteed by the Sixth and Fourteenth Amendments and Article 12 of the Massachusetts Declaration of Rights had a significant impact on the outcome of the trial and constitutes reversible error." Given those direct invocations of rights protected by the federal Constitution, Barresi's case presents a situation not unlike the one we confronted in Scarpa, where we observed that "by identifying the Sixth Amendment in his motion for a new trial, petitioner cites a specific provision of the Constitution, and, at the same time, provided a backdrop against which his later filings had to be viewed." 38 F.3d at 7 (citation and internal quotation marks omitted).

Unlike his intermediate appellate brief, however, Barresi's ALOFAR is far less direct in describing his federal

-10-

claims. Facially, it seems primarily devoted to his claim that the trial court misconstrued and misapplied the Massachusetts Rape Shield Law. Consequently, much of that pleading is dedicated to discussing principles of statutory construction under applicable state law. Nevertheless, the ALOFAR also discloses that Barresi continued to seek vindication of rights protected by the United States Constitution. Barresi alleged, for example, that the trial court's refusal to allow him to introduce expert medical testimony deprived him of "an opportunity to present an effective challenge to the complainant's credibility." He also asserted that the trial court's rulings amounted to "an impermissible infringement on [his] right to cross-examine [the complainant]," and, as a consequence, he claimed that his "due process guarantees [were] undermined" by the disputed trial court rulings.

To support his ALOFAR arguments, Barresi provided citations to state judicial opinions in which the SJC directly addressed the same federal constitutional rights he was invoking. For example, to support his assertion that the trial court's repeated denial of his requests to inquire into the complainant's recent sexual conduct with one of her contemporaries amounted to an "impermissible infringement of the right to cross-examine her," Barresi relied upon Commonwealth v. Elliot, 393 Mass. 824, 473 N.E.2d 1121 (1985). In Elliot, the SJC addressed the federal constitutional issues implicated when a criminal defendant is precluded from introducing evidence aimed at impeaching or otherwise cross-examining a victim of sexual assault:

-11-

> We are aware of the ordeal rape complainants must undergo in assisting the prosecution of their attackers. The Legislature has shown sensitivity to a complainant's plight. G.L. c. 233, § 21B. At the same time we cannot lose sight of the defendant's right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by art. 12 of the Commonwealth's Declaration of Rights, to confront adverse witnesses "by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."

473 N.E.2d at 1123-24 (quoting Davis v. Alaska, 415 U.S. 308, 316 (1974)). Barresi's ALOFAR also relied upon Commonwealth v. Stockhammer, 409 Mass. 867, 570 N.E.2d 992 (1991), to support his claim that the trial court's application of the Massachusetts Rape Shield Law deprived him of federally protected due process rights. Stockhammer, in turn, relied upon Elliot in pointing out that "rape convictions have been reversed on a number of occasions because of rulings by trial judges prejudicially infringing on the right to cross-examine the complainant." 570 N.E. 2d at 998.

Without question, it would be better, and far less risky, for habeas petitioners to highlight the federal nature of claims presented to a state's highest court by plainly describing them in federal terms and by citing federal precedent. Nevertheless, there are circumstances under which a habeas petitioner, like Barresi, may still fairly present a federal constitutional claim, notwithstanding his or her exclusive reliance upon state court precedent:

> It is true, of course, that deployment of federal authority sometimes is not a

-12-

> prerequisite to adequate presentation of a
> federal claim to the state courts.
> Nevertheless, such occasions will be few and
> far between, and they invariably will involve
> some suitable surrogate for explicit reference
> to federal authorities, say, an emphasis on
> federal due process rights in the petitioner's
> cited state cases or an analysis of state law
> that adopts or parallels federal
> constitutional analysis.

Adelson, 131 F.3d at 263 (citations omitted); see also Scarpa, 38 F.3d at 8 ("Although [citation to federal authorities] is strongly recommended if only to avoid controversies of this nature, we have specifically declined to adopt a bright-line rule. The guidelines we have promulgated in respect to exhaustion are intended to be instructive, rather than to comprise the sole corridors through which the actual embodiment of fair presentation may pass.") (citation and internal quotation marks omitted); Nadworny, 872 F.2d at 1099 ("[A] wooden rule which unfailingly denies exhaustion if no federal cases were cited stateside seems to us too restrictive.").

Although Barresi's ALOFAR relies almost entirely upon state precedent to support his federal constitutional claims, the decisions he cites do directly address the federal constitutional issues central to his effort to obtain a new trial. And, those decisions recognize and discuss the federal constitutional issues plainly implicated when a state's rape shield law arguably conflicts with a criminal defendant's constitutionally protected

right to confront and cross-examine adverse witnesses — the very point Barresi has argued all along.[1]

In summary, then, several factors, considered in light of the entire record, persuade us that Barresi met, albeit minimally, the exhaustion requirement of 28 U.S.C. § 2254. First, his ALOFAR alleges that the trial court's adverse evidentiary rulings deprived him of the right to present an effective challenge to the complainant's credibility and infringed his right to cross-examine her. When a state rape shield statute operates to "prevent a criminal defendant from presenting relevant evidence" and diminishes his or her "ability to confront adverse witnesses and present a defense," the statute "unquestionably implicates the Sixth Amendment." Michigan v. Lucas, 500 U.S. 145, 149 (1991). Second, the ALOFAR specifically asserts that, as a consequence of the challenged trial court rulings, Barresi's right to due process

---

[1] That a criminal defendant has a constitutionally protected right to cross-examine adverse witnesses is well established and widely recognized. In Pointer v. Texas, 380 U.S. 400 (1965), for example, the Supreme Court observed:

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.

Id. at 405. More recently, in Davis v. Alaska, 415 U.S. at 320, the Court called the ability to effectively cross-examine adverse witnesses in a criminal case a "vital constitutional right."

-14-

was infringed.  Third, Barresi's ALOFAR invokes state decisional authority that specifically addresses the federal constitutional character of issues he sought to litigate.  Finally, the ALOFAR's "backdrop" -- Barresi's intermediate appellate brief -- plainly and unequivocally raised the same federal constitutional issues presented in the ALOFAR, and relied upon citations to appropriate federal authority.

So, notwithstanding the lack of citation to any federal authority in the ALOFAR itself, when viewed against the "backdrop" of Barresi's lower court pleadings, the ALOFAR was minimally sufficient to alert a reasonable jurist to the fact that Barresi was seeking review of alleged trial court errors that had a decided federal constitutional dimension.  And, unlike the petitioner in Mele, nothing in the record suggests that Barresi abandoned the federal constitutional claims he advanced before the intermediate appellate court.  That conclusion is compelled by Barresi's references in the ALOFAR to his "due process guarantees," his right to "present an effective challenge to the complainant's credibility," the trial court's alleged "impermissible infringement on [his] right to cross-examine her," as well as his reliance on state court precedent that unambiguously considered and addressed the federal constitutional dimension of those issues. Consequently, while it is rare that a petitioner will be found to have successfully presented a federal constitutional claim to a state's highest court without referring to federal precedent, see

Adelson, 131 F.3d at 263, in our judgment, this case manages to fall across the line separating exhausted from unexhausted claims.

IV.

As noted earlier, resolving cases like this requires an individualized, case-specific, factual inquiry. Whether a petitioner's enigmatic state pleadings were sufficient, alone or in combination, to apprise a reasonable jurist of the federal constitutional dimensions of his or her claims will often prove difficult to determine. Reasonable minds can, of course, fairly debate the ultimate resolution of such fact-specific issues. Nevertheless, rather than impose "bright line" rules likely to prove overly restrictive, we think it appropriate to continue to focus primarily on the claims actually presented in the pleadings filed in the state's highest court -- the ALOFAR in the Commonwealth -- but also to consider the "backdrop," comprised of earlier filed pleadings. Here, although Barresi's ALOFAR is hardly a model worthy of emulation, it was, in our judgment, minimally sufficient to apprise a reasonable jurist that Barresi was seeking to vindicate federally protected constitutional rights of confrontation and cross-examination.

The district court's order dismissing Barresi's habeas corpus petition for want of exhaustion is vacated and the petition reinstated. The matter is remanded to the district court for further proceedings consistent with this opinion.