# United States Court of Appeals
## For the First Circuit

No. 05-2166

ROBERT P. GOODRICH,

Petitioner, Appellant,

v.

TIMOTHY HALL, Superintendent,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Jill Brenner Meixel, with whom Peter E. Gelhaar and Donnelly, Conroy & Gelhaar, LLP were on brief, for appellant.
Maura D. McLaughlin, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, was on brief, for appellee.

May 18, 2006

**LYNCH**, **Circuit Judge**.  Robert Goodrich appeals from the district court's denial of his petition for habeas corpus relief under 28 U.S.C. § 2254.  That court granted Goodrich a certificate of appealability providing for review of the question of "[w]hether [Goodrich] was denied his due process rights under the Fourteenth Amendment of the United States Constitution when knowingly false testimony was presented before the state grand jury and [Goodrich] was unlawfully indicted as a result thereof."  We affirm the denial of the petition.

Goodrich was convicted in Massachusetts after a jury trial in January 2001 of armed robbery and was sentenced to ten to fifteen years' imprisonment.  Goodrich, in August 1999, had snuck into the office of a used car dealership just as Yajun Yang, who knew Goodrich, was locking up for the night.[1]  Goodrich stuck a gun into Yang's ribs, robbed him of $200, and forced him into the trunk of a car, where he left him.

In December 2002, the state Appeals Court affirmed Goodrich's conviction, rejecting his sole claim that "the indictment against him should have been dismissed because the Commonwealth presented improper testimony before the grand jury." Commonwealth v. Goodrich, 779 N.E.2d 1004, 2002 WL 31730244, at *1 (Mass. App. Ct. 2002) (unpublished table decision).  The Supreme

---

[1] Goodrich is described in some parts of the record as an "ex-employee" of the dealership.

Judicial Court (SJC) denied his application for leave to obtain further appellate review (ALOFAR) on January 22, 2003. Commonwealth v. Goodrich, 782 N.E.2d 1083 (Mass. 2003) (unpublished table decision). Goodrich filed his petition for a writ of habeas corpus in federal court on December 17, 2003, and this was denied on its merits on March 11, 2005.

The gist of the habeas claim is that the prosecution had improperly offered evidence at the grand jury proceeding which was so egregious as to require dismissal of the indictment. The theory is that dismissal was required despite the facts that the petit jury convicted Goodrich after a trial and that the petit jury was unaware of the testimony before the grand jury about which Goodrich complains. Goodrich asserts that no grand jury would have indicted him save for the improper evidence, and that this means the indictment should have been dismissed; thus, his conviction is invalid, and habeas relief is required.

The alleged impropriety was that a detective had read to the grand jury the police report of one of the officers who had arrived at the scene. According to the detective's testimony, the police report stated that Yang said that he "only knows the suspect [an ex-employee] as Bob, and that approximately two months ago the same employee stole $12,000 from him." A grand juror inquired of the detective, "You said something about there were two robberies; one for $200 and one for $12,000?" The detective replied

accurately that that was "what the victim was telling us." But then he went on to say, "We learned later that this had apparently taken place" outside the jurisdiction of his police department. The prosecutor interceded and instructed the grand jurors to disregard the information pertaining to the alleged $12,000 robbery, to strike it from their minds, and to focus on the incident in which the $200 was stolen.

Goodrich insists that he was never indicted for any $12,000 robbery (or even accused of such a robbery other than as described above), and the Commonwealth does not argue otherwise. Goodrich argues that the prosecutor, seeking to portray Goodrich as a habitual robber, knowingly presented false testimony to the grand jury; that this ploy succeeded in prejudicing the grand jury; and that the resulting indictment and ultimate conviction violated his Fourteenth Amendment right to due process.

The familiar litany of analysis of habeas petitions is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, and judicially created rules of restraint. There is no dispute that the petition was timely filed, within the statutory limits. See id. § 2244(d)(1)(A) (providing for one-year period of limitation, running from the latest of, inter alia, "the date on which the judgment became final by the conclusion of direct review," for habeas applications by state prisoners).

-4-

The next question is whether Goodrich had exhausted his state remedies by having first presented the federal constitutional issue to the state courts for their decision. See id. § 2254(b),(c); Picard v. Connor, 404 U.S. 270, 275 (1971) (discussing exhaustion principle). We review this issue de novo. Barresi v. Maloney, 296 F.3d 48, 51 (1st Cir. 2002).

This circuit's rules about what constitutes presenting a federal issue are fairly generous. See id. (stating that "a petitioner need not express his federal claims in precisely the same terms in both the state and federal courts"). We have said that the "ways in which a petitioner might satisfy his or her obligation to fairly present a federal constitutional issue to a state's highest court" are "myriad," and we have listed examples, such as "(1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular right specifically guaranteed by the Constitution." Id. at 52 (quoting Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987)). The exhaustion requirement can also be satisfied where "[a]n individual's claim, arising under and asserted in terms of state law, . . . as a practical matter, [is] indistinguishable from one arising under federal law." Id. (internal quotation marks

omitted) (quoting Nadworny v. Fair, 872 F.2d 1093, 1099 (1st Cir. 1989)).

In his brief before the state Appeals Court, Goodrich expressly relied on the Fourteenth Amendment to the United States Constitution, explicitly invoked its Due Process Clause, and cited to apposite federal cases, including United States v. Basurto, 497 F.2d 781 (9th Cir. 1974).

What makes this question of exhaustion close is that the only decisions cited in Goodrich's ALOFAR are state decisions. However, Goodrich primarily relied in the ALOFAR on a state case invoking federal due process as to an alleged error in the grand jury proceedings. See Commonwealth v. Kelcourse, 535 N.E.2d 1272, 1273 (Mass. 1989) (defendant argued that prosecutor's statement to grand jury violated, inter alia, "his Fourteenth Amendment right to due process" (citing Hicks v. Oklahoma, 447 U.S. 343, 345-47 (1980))). Furthermore, Goodrich's ALOFAR did explicitly frame both his "Statement of Points with Respect to Which Further Appellate Review is Sought" and his "Statement of Argument" in terms of a violation of "Amendment XIV," by which he appears to have meant the Fourteenth Amendment to the United States Constitution (and also in terms of a violation of a state constitutional provision).

Taking into account the background of Goodrich's more explicit federal argument before the state Appeals Court, the absence of any sign that Goodrich abandoned his federal claim in

-6-

the ALOFAR, and the nature of the argument in the ALOFAR (which is strikingly similar to, and indeed largely a verbatim copy of, the Appeals Court brief), see Barresi, 296 F.3d at 52 n.1 ("If it cannot be said that the petitioner abandoned his or her federal claims on appeal to the SJC, federal exhaustion review includes consideration of the petitioner's lower court filings as a 'backdrop' to his or her ALOFAR."), we think it likely "a reasonable jurist would recognize the [federal] constitutional dimensions of the petitioner's claims." Id. at 52.

The federal due process claims having been exhausted, the next question is which standard of review to apply. Under AEDPA, federal courts may not grant habeas relief "'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court decision" meets either of two criteria: "1) [it] 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 2) [it] 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" McCambridge v. Hall, 303 F.3d 24, 34 (1st Cir. 2002) (en banc) (citations omitted) (quoting 28 U.S.C. § 2254(d)). In this circuit, if the state court has not adjudicated the federal claim on the merits, then we do not ask whether the decision involved an unreasonable application of federal law, but instead review the constitutional question de

novo. See id. at 35; see also Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (observing that "we can hardly defer to the state court on an issue that the state court did not address"). Here, it does not matter which standard of review we apply, for the outcome is the same.

The Commonwealth argues that our analysis should then proceed, in priority, to ask the question of whether Goodrich's claim is barred because, under Teague v. Lane, 489 U.S. 288 (1989), it could only succeed if this court were to articulate a "new constitutional rule[] of criminal procedure," and because such a rule (unless it comes within an exception) may not be applied to cases, such as this one, "which have become final before the new rule[] [is] announced." Id. at 310 (plurality opinion). It is clear that a Teague analysis would be required before a federal court may grant a habeas petition. Horn v. Banks, 536 U.S. 266, 267, 371-72 (2002) (per curiam); Caspari v. Bohlen, 510 U.S. 383, 389, 396-97 (1994). The reverse is not true. This court has held that where a habeas petition can easily be denied on other grounds, there is no need to do a Teague analysis first. Campiti v. Matesanz, 333 F.3d 317, 321-22 (1st Cir. 2003); accord Townes v. Murray, 68 F.3d 840, 847-48 (4th Cir. 1995); Eaglin v. Welborn, 57 F.3d 496, 499 (7th Cir. 1995) (en banc).

There are practical reasons not to perform a Teague analysis in this sort of case. Habeas proceedings are, by their

nature, procedurally complicated, and there is no reason, once a habeas petition is properly before a federal court, to add to the complexity by requiring analysis of complicated issues, when a simpler solution is at hand. See Campiti, 333 F.3d at 321-22. There is a strong interest expressed by Congress in AEDPA in expediting the handling of habeas petitions, an interest which would be disrupted by requiring unnecessary analyses. We realize the state may waive a Teague issue by not presenting it. See Schiro v. Farley, 510 U.S. 222, 229 (1994); see also Caspari, 510 U.S. at 389 ("[A] federal court may, but need not, decline to apply Teague if the State does not argue it."). That does not mean a court must resolve the Teague issue simply because the state does raise it. Moreover, here, any resolution of the very fact-based question would not provide a useful black-letter rule helpful in future cases.

We skip the Teague analysis and turn to the merits. Although "there is no constitutional requirement that States institute prosecutions by means of an indictment returned by a grand jury," that fact "does not relieve those States that do employ grand juries from complying with the commands of the Fourteenth Amendment in the operation of those juries." Rose v. Mitchell, 443 U.S. 545, 557 n.7 (1979) (citation omitted). The district court's cogent analysis on the merits explains well why Goodrich's claim fails. We add that the Supreme Court has not

defined the circumstances in which impropriety involving even a federal grand jury can ever lead to dismissal of an indictment once a petit jury has returned a verdict of guilt. See United States v. Mechanik, 475 U.S. 66, 73 (1986) ("[T]he petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation [of a Federal Rule of Criminal Procedure]."). But those circumstances, as this court recently noted, are "very rare," even when there has not been a petit jury verdict of conviction -- and all the more so when there has. In re United States, 441 F.3d 44, 60 (1st Cir. 2006). The circumstances justifying dismissal of the indictment after conviction must be so severe, the prosecutorial misconduct so "blatant," as to "call[] into doubt the fundamental fairness of the judicial process." United States v. Ortiz de Jesus, 230 F.3d 1, 4 (1st Cir. 2000); see also United States v. Reyes-Echevarria, 345 F.3d 1, 4-5 (1st Cir. 2003) (upholding district court's refusal to dismiss indictment).

Where a defendant seeks dismissal of the indictment before there is a petit jury verdict, such relief "is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (quoting Mechanik, 475 U.S.

at 78 (O'Connor, J., concurring in the judgment)).  Further, "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits."[2]  Costello v. United States, 350 U.S. 359, 363 (1956).

Measured against this standard, petitioner's claim is without merit.  Even assuming the detective's testimony before the grand jury went too far, any misstep by the detective in his testimony was corrected by the prosecutor, and there is no reason to think Goodrich would not have been indicted anyway.  The final straw is that the petit jury was unaware of the allegedly improper testimony and its verdict is unassailable.

The dismissal of the petition for habeas corpus is affirmed.

---

[2] Despite Goodrich's strenuous assertions that this is not the "usual" case, it is clear that we are not dealing here with a defect in the grand jury proceedings that (assuming it even occurred) might be regarded as a special case.  Cf. Bank of Nova Scotia, 487 U.S. at 257 (noting that "racial discrimination in selection of grand jurors" is a special case); Mechanik, 475 U.S. at 70 n.1 (same).