Thomas Charles LEMAY

v.

Robert MURPHY.

Civil Action No. 07–10785–RGS.

United States District Court,
D. Massachusetts.

Jan. 22, 2008.

Thomas Charles Lemay, Bridgewater, MA, pro se.

Annette C. Benedetto, Department of Attorney General, Boston, MA, for Robert Murphy.

### ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STEARNS, District Judge.

As I agree with Magistrate Judge Bowler's thorough Report, I will adopt her Recommendation and order the petition *DISMISSED*.[1] The case may now be closed.

SO ORDERED.

## REPORT AND RECOMMENDATION RE: MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS (DOCKET ENTRY # 6)

### January 4, 2008

BOWLER, United States Magistrate Judge.

Pending before this court is a motion to dismiss (Docket Entry # 6) filed by respondent Robert Murphy ("respondent"), Superintendent of the Massachusetts Treatment Center for Sexually Dangerous Persons ("treatment center"), in Bridgewater, Massachusetts. Respondent moves to

---

1. Specifically, the Magistrate Judge found that while the petition was timely-filed, petitioner had failed without excuse to exhaust his state court remedies.

dismiss the above styled petition for writ of habeas corpus filed pro se by petitioner Thomas Charles Lemay ("petitioner"), who has been civilly committed to the treatment center. Respondent seeks dismissal because: (1) petitioner failed to timely file the petition pursuant to 28 U.S.C. § 2254(b)(1)(A); (2) petitioner failed to exhaust state court remedies; and (3) grounds one and two in the petition do not raise a federal or constitutional issue. (Docket Entry # 7).

An evidentiary hearing is not required or necessary. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court "shall not hold an evidentiary hearing on a claim unless a petitioner shows that his 'claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Neverson v. Bissonnette*, 242 F.Supp.2d 78, 88 (D.Mass.2003) (quoting section 2254(e)(2)), *aff'd on other grounds*, 366 F.3d 32 (1st Cir.2004). Restated, the standard provides that "if a petitioner develops a factual basis for a claim in state court (or sufficiently attempts to do so), subpart(e)(2) does not bar an evidentiary hearing in district court." *Guidry v. Dretke*, 397 F.3d 306, 322 (5th Cir.2005).

The facts taken from the state court records and related documents contain all the relevant and necessary undisputed facts. *See, e.g., Neverson v. Bissonnette*, 242 F.Supp.2d at 88. Thus, even if petitioner fell outside the confines of section 2254(e)(2), an evidentiary hearing under pre-AEDPA law is not required. *See Lopez v. Commonwealth of Massachusetts*, 349 F.Supp.2d 109, 125 (D.Mass.2004) (applying pre-AEDPA law regarding need for evidentiary hearing having ascertained that section 2254(e)(2) of AEDPA did not apply).

## BACKGROUND

On February 6, 1987, a grand jury in Worcester County, Massachusetts returned indictments charging petitioner with rape of a child by force, assault and battery by means of a dangerous weapon, kidnapping, and indecent assault and battery on a child.[1] The offenses took place on September 27, 1986. On May 20, 1987, petitioner pled guilty to all charges.

On the same day, a judge of the Massachusetts Superior Court Department (Worcester County) ("the trial court" or "the trial judge")[2] ordered petitioner committed to the treatment center for 60 days, during which time he was to be examined by qualified examiners to determine if he was a sexually dangerous person. On June 10, 1987, the examiners filed their reports with the trial court in which they found that petitioner was a sexually dangerous person.

On December 23, 1987, the trial court imposed a prison sentence of ten to 15 years for the rape conviction. Petitioner received prison sentences in connection with the other charges that ran concurrently with the rape sentence. On the same day, the trial court held a sexually dangerous hearing ("SDP hearing")[3] and

---

**1.** The indictment numbers are 87–0256 through 87–0259.

**2.** The "trial judge" refers only to the associate justice that rendered the sentence.

**3.** The transcript of the December 23, 1987 hearing no longer exists. (Docket Entry # 9, Ex. 2, p. A–183). The relevant statute requires a hearing. *See* Mass. Gen. L. ch. 123A, § 5 (1987 & 1988 ed.) ("If the court finds upon such hearing, that the person is a sexually dangerous person, it shall sentence such person"). Various state courts, however, note that a hearing took place. (Docket Entry # 9, Ex. 2, p. A–304 & Ex. 3).

committed petitioner to the treatment center for one day to life pursuant to sections four and five of former Massachusetts General Laws chapter 123A. Mass. Gen. L. ch. 123A (1987 & 1988 ed.) ("former chapter 123A").[4] In accordance with the statute, the commitment to the treatment center ran concurrently with the sentence for the rape conviction. Mass. Gen. L. ch. 123A, § 5 (1987 & 1988 ed.) (court "shall sentence such person ... for the original offense and may also commit such person to the center .... person who is both committed and sentenced under this section shall serve such sentence concurrently with the commitment").

On January 11, 1988, petitioner filed a pro se motion to withdraw the guilty plea and for a new trial under Rule 30 of the Massachusetts Rules of Criminal Procedure ("Rule 30"). (Docket Entry # 9, Ex. 2, p. A. 185). The trial judge held a hearing in October 1990 and denied the motion on December 3, 1990. (Docket Entry # 9, Ex. 2, pp. A. 15 & 185). On June 19, 1992, the Massachusetts Appeals Court ("the appeals court") denied the appeal of the denial of the new trial motion.[5] (Docket Entry # 9, Ex. 2, pp. A. 198–201).

Also on January 11, 1988, petitioner filed a pro se motion for release from unlawful restraint pursuant to Rule 30(a). (Docket Entry # 9, Ex. 2, pp. A. 15 & 226–227).

The trial court's docket[6] does not reflect any further action on this motion. (Docket Entry # 9, Ex. 2, pp. A. 15 & 23–27).

On August 28, 1995, petitioner filed a second motion for release from unlawful restraint under Rule 30(a). (Docket Entry # 9, Ex. 2, pp. A. 120–122). The trial court, perhaps erroneously, docketed the motion, an affidavit in support of the motion and a memorandum in support of the motion in Civil Action Number 95–1818 as opposed to in the trial court's docket.[7] (Docket Entry # 9, Ex. 2, pp. A. 120–122). The Commonwealth moved to dismiss. On November 17, 1995, the associate justice assigned to Civil Action Number 95–1818 allowed the motion to dismiss, dismissed the Rule 30(a) motion for release from unlawful confinement and ordered that the motion "be re-docketed as *Commonwealth v. Thomas C. LeMay,* indictment numbers 87–0256 through 87–0259," i.e., in the trial court's docket. (Docket Entry # 9, Ex. 2, p. A. 122).

Accordingly, on November 17, 1995, the trial court's docket contains the order re-docketing the Rule 30(a) motion. (Docket Entry # 9, Ex. 2, pp. A. 24, 28, 30 & 32). The affidavit in support of the motion for release from unlawful restraint alleges a denial of equal protection and due process under the Fourteenth Amendment as well as under former chapter 123A.[8] (Docket

4. The relevant sections of the 1986 and 1988 official versions of the statute in effect at the time petitioner committed the offense and when he was sentenced are the same. Mass. Gen. L. ch. 123A (1987 & 1988 ed.); (Docket Entry # 9, Ex. 2, p. A–153).

5. On December 13, 1991, petitioner filed a pro se motion to revise and revoke the sentence. Three days later, the trial judge denied the motion without a hearing. (Docket Entry # 9, Ex. 2, p. A. 15).

6. The "trial court's docket" refers to the docket in the criminal proceedings, Criminal Action Number 1987–00256–00259.

7. Rule 30 "assigns the motion to the trial judge who heard the case, on the theory that his familiarity with the case can assist in its effective handling." *In re McCastle,* 401 Mass. 105, 514 N.E.2d 1307, 1308 (1987) (discussing a Rule 30(a) motion). The associate justice assigned to Civil Action Number 95–1818 was not the trial judge.

8. Date stamped as filed on August 28, 1995, the affidavit also has the stamped docket number "95–1818" crossed out by hand with the words, "Redocketed 87–0256–0259." (Docket Entry # 9, Ex. 2, p. A. 40).

Entry # 9, Ex. 2, pp. A. 40–42). As stated in the affidavit, the basis for the motion rests upon the sentencing in the morning of December 23, 1987, prior to the SDP hearing and commitment in the afternoon as a violation of equal protection and due process. Petitioner further argued that the repeal of former chapter 123A resulted in different treatment and classification thereby violating petitioner's equal protection rights under section one of the Massachusetts Declaration of Rights and under the Fourteenth Amendment.

On August 28, 1995, petitioner filed the memorandum in support of the motion for release from unlawful restraint reiterating the foregoing grounds. (Docket Entry # 9, Ex. 2, pp. A. 45–50). Like the affidavit, the supporting memorandum has the stamped docket number "95–1818" crossed out by hand with the words, "Redocketed 87–0256–0259." (Docket Entry # 9, Ex. 2, p. A. 43).

The memorandum cites both state and federal constitutional cases to raise due process and equal protection arguments under the federal Constitution.[9] For example, petitioner cites *San Antonio Independent School District v. Rodriguez*, 411 U.S. 450, 457–458 (1988)," for the principal that a " 'classification involving a suspect group of a fundamental right must be supported by a compelling State interest.' " (Docket Entry # 9, Ex. 2, p. A. 49). Although the six page memorandum devotes two full pages to the *Commonwealth v. Desroches*, 27 Mass.App.Ct. 866, 545 N.E.2d 64 (1989), decision, it references

the United States Constitution and petitioner's due process and equal protection rights throughout the last four pages.

In December 1996, the trial court allowed petitioner's motion for appointment of counsel and instructed counsel to advise the court when the motion for release from unlawful restraint would be "ready for hearing." (Docket Entry # 9, Ex. 2, p. A. 24). On November 30, 2000, the Committee for Public Counsel Services ("CPCS") advised the trial court of its decision "not to assign counsel." (Docket Entry # 9, Ex. 2, p. A. 24). Accordingly, on December 4, 2000, the trial court ordered the assistant district attorney to consult with petitioner and propose various dates for a hearing on the motion.

On June 8, 2001, petitioner filed a motion to amend the motion for release from unlawful restraint under Rule 30(a). (Docket Entry # 9, Ex. 2, pp. A. 25 & 35–38). Clarifying the original motion, petitioner argued that the trial court did not commit him to the treatment center until after the sentencing. He asserted that the commitment violated equal protection and due process because it took place after the sentencing. He further maintained it was error to commit him to the treatment center "without any new sexually assaultive behavior." (Docket Entry # 9, Ex. 2, p. A. 35). On December 17, 2001, the trial court appointed counsel for petitioner and endorsed the motion to amend the motion for unlawful restraint with the statement that it would take no action pending the ap-

---

9. The two equal protection arguments (Docket Entry # 9, Ex. 2, pp. A. 47–50) are similar to grounds one and three in the present petition. As explained *infra,* however, the Application to Obtain Further Appellate Review ("ALOFAR") only identified the due process argument. The single sentence in the ALOFAR that incorporated the Rule 30(a) motion and identified the federal due process claim reads as follows:

Lemay incorporates his previously filed M.R.Civ.P. 30 motion, Motion for Post Conviction Relief, and Appeals Court brief, and argues that his confinement after September 27, 2000 and his subsequent SDP commitment was in violation of due process under the Fourteenth Amendment and art. 12 of the Massachusetts Declaration of Rights.
(Docket Entry # 9, Ex. 6, § 4).

pointment. (Docket Entry # 9, Ex. 2, pp. A. 25 & 35).

Difficulties between petitioner and appointed counsel ensued and on October 8, 2002, the trial court instructed CPCS to appoint successor counsel "promptly." (Docket Entry # 9, Ex. 2, p. A. 25). Successor counsel filed an appearance on February 21, 2003. More than a year later, petitioner, represented by successor counsel, filed a motion for post conviction relief on May 20, 2004. (Docket Entry # 9, Ex. 2, p. A. 25). In addition to state law violations, petitioner again argued that the SDP hearing did not precede both sentencing and commitment to the treatment center thereby violating his due process rights under the Fourteenth Amendment. (Docket Entry # 9, Ex. 2, pp. A. 97–102). Because of the violation, petitioner argued that his classification as a sexually dangerous person should be removed and that he was being restrained illegally because he had served his entire prison sentence. Without referring to an equal protection claim, the newly filed motion incorporated the "previously filed M.R.Civ.P. 30 motion." (Docket Entry # 9, Ex. 2, p. A. 102).

On December 23, 2005, the trial court denied the Rule 30 motion for post conviction relief. (Docket Entry # 9, Ex. 4; Docket Entry # 9, Ex. 2, pp. A. 153–158). The trial court accurately noted that petitioner raised the same arguments in an appeal from a dismissal of a writ for habeas corpus. Agreeing with the appeals court, the trial court also addressed the merits. Finding that petitioner was not prejudiced by the alleged delay in conducting the SDP hearing, which took place on the same day as the sentencing and commitment, the trial court denied the motion. (Docket Entry # 9, Ex. 2, pp. A. 153–158).

On December 28, 2005, petitioner, still represented by successor counsel, filed a notice of appeal of the trial court's December 23, 2005 decision. (Docket Entry # 9, Ex. 2, pp. A. 26 & 161). The appellate brief raised only a due process violation as opposed to an equal protection violation. Again, petitioner argued that the sentencing before the SDP hearing and the commitment violated the relevant provisions of former chapter 123A as well as the Due Process Clause of the Fourteenth Amendment. (Docket Entry # 9, Ex. 2, pp. A. 4–9).

On October 23, 2006, the appeals court affirmed the trial court's denial of the Rule 30 motion for post conviction relief. *Commonwealth v. LeMay*, 67 Mass.App.Ct. 1111, 855 N.E.2d 790 (Mass.App.Ct.2006) (Docket Number 06–P–123). The appeals court held that petitioner had already unsuccessfully raised the issue of the illegality of his commitment to the treatment center "when appealing the dismissal of his petition for writ of habeas corpus." *Id.* The appeals court additionally affirmed the denial of the motion for reasons stated in the November 2, 2005 appeals court opinion and by the trial court in the December 23, 2005 decision. *Id.*

Petitioner filed the referenced motion for a writ of habeas corpus in a civil proceeding in Massachusetts Superior Court (Worcester County) ("the state habeas court") on May 3, 2004, Civil Action Number 04–00875. (Docket Entry # 9, Ex. 3, p. 48). Petitioner raised arguments similar to those previously included in the Rule 30(a) motion for release from unlawful restraint. Thus, petitioner argued a violation of his equal protection and due process rights when the trial court sentenced him prior to conducting an SDP hearing in violation of the former and amended versions of chapter 123A. Because the sentencing took place prior to the SDP hearing and commitment, petitioner asserted that he could not be committed under section five but, instead, had to be committed

under section six which applied to sexually assaultive behavior of "prisoner[s] under sentence in any jail." Mass. Gen. L. ch. 123A, § 6 (1987 & 1988 ed.); (Docket Entry # 9, Ex. 3, pp. 50–54).

The state habeas court denied the writ on June 11, 2004, without a hearing. (Docket Entry # 9, Ex. 3, p. 48). Petitioner filed an appeal. (Docket Entry # 9, Ex. 3, pp. 48 & 55; Docket Number 2004–P–1138). On November 2, 2005, the appeals court denied the appeal in a written opinion. The appeals court addressed the alleged procedural infirmities with respect to the SDP hearing, sentencing and commitment at length. The court rejected petitioner's argument based upon the timing of the criminal sentencing in the morning and the SDP hearing and commitment four or five hours later on the same day. Further noting that the trial court did not sentence petitioner under the section of former chapter 123A upon which petitioner rested his argument, the appeals court determined that the trial court did not commit any errors and summarily rejected the due process argument. (Docket Entry # 9, Ex. 5).

On December 14, 2005, petitioner filed a pro se ALOFAR late with the Massachusetts Supreme Judicial Court ("SJC"). The ALOFAR challenged the foregoing appeals court's November 2, 2005 decision in Docket Number 2004–P–1138. (Docket Entry # 9, Ex. 3, p. 58). The SJC allowed the late filing. On December 22, 2005, however, petitioner filed a motion to withdraw the ALOFAR without prejudice. The SJC allowed the motion to withdraw the same day. (Docket Entry # 9, Ex. 3, p. 58).

Meanwhile, on November 8, 2006, petitioner, still represented by successor counsel, filed an ALOFAR appealing the October 23, 2006 decision of the appeals court in Docket Number 06–P–123. In the ALOFAR before the SJC, petitioner raised the same issue of the illegality of the civil commitment to the treatment center. Incorporating the Rule 30(a) motion for release from unlawful restraint, the motion for post conviction relief and the appeals court brief, petitioner contended that "his confinement after September 27, 2000 and his subsequent SDP commitment was in violation of due process under the Fourteenth Amendment" and the Massachusetts Declaration of Rights.[10]

Elsewhere, the ALOFAR summarily referred to petitioner's continued confinement as "in violation of the Constitution or laws of the United States" without further elaboration. The filing primarily addressed the state law arguments. (Docket Entry # 9, Ex. 6). Thus, with respect to federal claims, the ALOFAR expressly identified only a due process violation. On December 20, 2006, the SJC denied further appellate review without comment. *Commonwealth v. LeMay*, 448 Mass. 1101, 859 N.E.2d 432 (Mass.2006).

On April 26, 2007, petitioner filed the present petition raising three grounds for relief. In ground one, petitioner complains about the sentencing on the criminal conviction prior to the commitment to the treatment center. He also maintains that there was no new sexually assaultive behavior. *See* Mass. Gen. L. ch. 123A, § 6 (1987 & 1988 ed.). As a result, petitioner was "denied equal protection." (Docket Entry # 1, ¶ 12A). Ground two claims that after being sentenced in the morning, the trial court used the same evidence to commit petitioner as a sexually dangerous person.

In ground three, petitioner raises a violation of state and federal equal protection because he received different treatment

**10.** See footnote nine.

after April 6, 1986, when the prison population became divided into two groups. The varying classification used for the purpose of instituting chapter 123A commitment proceedings resulted in different treatment that served no useful purpose, according to petitioner.

## DISCUSSION

Respondent contends that the petition should be dismissed because petitioner failed to file the petition within the statute of limitations enacted by Congress as part of AEDPA. Respondent also argues that petitioner failed to exhaust state court remedies on each of the claims. Finally, respondent claims that petitioner is not entitled to habeas relief because grounds one and two are purely matters of state law and therefore not cognizable in habeas review.

### I. *Statute of Limitations*

Prior to the AEDPA's enactment, "a prisoner faced no strict time constraints in filing a petition for writ of habeas corpus." *Villegas v. Johnson*, 184 F.3d 467, 468 (5th Cir.1999). The AEDPA dramatically altered these circumstances by imposing a one year limitations period for habeas petitions. 28 U.S.C. § 2244(d)(1).

For habeas challenges to state convictions which became final prior to the AEDPA's April 24, 1996 enactment, this circuit affords petitioners a one year grace period running from April 25, 1996. *See Gaskins v. Duval*, 183 F.3d 8, 9 (1st Cir. 1999) (applying the reasoning and the one year grace period applicable to section 2255 motion in *Rogers v. United States*, 180 F.3d 349, 351–352 (1st Cir.1999), to Gaskins' section 2254 petition). As reasoned in *Rogers*, a conviction becomes final for purposes of applying the grace period

when the Supreme Court denies an application for certiorari on direct review.[11] *Rogers v. United States*, 180 F.3d at 352; *accord Shatney v. Strange*, 1999 WL 391116 at *2 (D.R.I. May 20, 1999) (circuit courts have consistently held that a judgment becomes final upon the completion of certiorari proceedings in the Supreme Court).

Inasmuch as petitioner did not seek certiorari review with the Supreme Court, the conviction became "final" within the meaning of section 2244(d)(1)(A) 30 days after entry of the judgment by the trial court. Rule 4(b), Mass. R.App. P.; *Ledoux v. Dennehy* 327 F.Supp.2d 97, 100 (D.Mass. 2004) (conviction deemed "final" under section 2244(d)(1)(A) when the petitioner failed to appeal within 30 days after denial of motion for new trial). Because petitioner did not file a direct appeal, the conviction became final on January 22, 1988, 30 days after he was sentenced. The 30 day time period expired well prior to the AEDPA's April 24, 1996 effective date and thus the one year limitations period would not have begun to run until April 25, 1996, the day after the AEDPA's enactment. *See Gaskins v. Duval*, 183 F.3d at 9 (recognizing that one year period began to run "on April 25, 1996, the day after AEDPA's enactment").

Although the one year period forecloses relief for petitioners who choose to ignore it, the statute serves the "strong public interest" of encouraging "the prompt assertion of habeas claims." *David v. Hall*, 318 F.3d at 347. The one year time limit promotes judicial efficiency, conserves judicial resources, "safeguards the accuracy of state court judgments by requiring resolution of constitutional issues while the record is fresh, and lends finality to state

---

11. In contrast, on state collateral review, the 90 day period in which a petitioner could have but did not file a petition for certiorari

with the Supreme Court does not toll the one year limitations period. *See David v. Hall*, 318 F.3d 343, 345 (1st Cir.2003).

court judgments within a reasonable time." *Acosta v. Artuz,* 221 F.3d 117, 123 (2nd Cir.2000).

■ Under section 2244(d)(2), however, petitioner receives the benefit of a statutory provision which tolls the one year period during the time a "properly filed" post conviction state application for collateral review is "pending." 28 U.S.C. § 2244(d)(2); *Gaskins v. Duval,* 183 F.3d at 9–10 (applying section 2244(d)(2) tolling provision to section 2254 petition involving conviction which became final prior to April 24, 1996). Section 2244(d)(2) provides that:

> The time period during which a properly filed application for State post conviction or other collateral review with respect to pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

At the time the one year grace period began to run in April 1996, the Rule 30(a) motion for release from unlawful confinement remained outstanding.[12] The issue therefore devolves into whether the foregoing motion was a "properly filed application" within the meaning of section 2241(d)(2).

■ Under section 2244(d)(2), an application is "filed" when delivered and accepted by the court and "properly filed" when the delivery and acceptance comply with applicable laws governing filings. *Artuz v. Bennett,* 531 U.S. 4, 7, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). As defined by the Court in *Artuz:*

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record; and it is "properly filed" when its delivery and acceptance are in

compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, applicable time limits upon its delivery, the court and office in which it must be lodged, and payment of a filing fee.

*Artuz v. Bennett,* 531 U.S. at 4, 121 S.Ct. 361.

Examining Massachusetts filing rules, a Rule 30(a) motion for unlawful restraint may be filed "at any time, as of right" under Massachusetts law. Mass. R.Crim. Proc. 30(a). Motions in criminal proceedings "shall be filed in the manner provided in the civil actions." Mass. R.Crim. P. 32(d) (captioned "Filing"). "Under Mass. R.Civ.P. 5(e), papers must be filed with the clerk of the court." Reporter's Notes, Mass. R.Crim. P. 32(d). Rule 5(f), Mass. R. Civ. P., in turn, provides that if a party fails to file any paper required "to be filed, the court on its own motion ... may order the paper to be filed forthwith."

On November 17, 1995, an associate justice of the trial court dismissed the Rule 30(a) motion and ordered it redocketed in the trial court's docket. (Docket Entry # 9, Ex. 2, p. A. 24). The order to redocket the motion complied with Massachusetts filing rules because "the court on its own motion ... may order the paper to be filed forthwith." Mass. R. Civ. P. 5(f). Furthermore, both the affidavit and the memorandum in support of the motion contain the clerk's stamped date of August 28, 1995, underneath the word "FILED." Civil Action Number 95–1818 is crossed out on both filings with the handwritten words, "Redocketed 87–0256–0259." (Docket Entry # 9, Ex. 2, pp. A. 40 & 43). The trial court's docket contains subsequent references to the Rule 30(a) motion thereby indicating that the trial court con-

---

**12.** As previously noted, the motion was originally filed in Civil Action Number 95–1818 and ordered redocketed in the trial court's docket on November 17, 1995.

sidered the motion properly filed. Having been ordered redocketed into the proper case and in light of the clerk's "FILED" stamps and dates as well as the handwritten language on the affidavit and the supporting memorandum, the Rule 30(a) motion was a "properly filed" within the meaning of the section 2254.[13] With no ruling made, it was also pending on April 25, 1996, when the one year grace period began to run.

■ An "application is 'pending,' not only when it actually is being considered by the trial or appellate court, but also during the 'gap' between the trial court's initial disposition and the petitioner's 'timely filing of a petition for review at the next level.'" *Currie v. Matesanz*, 281 F.3d 261, 266 (1st Cir.2002). The Rule 30 motion for post conviction relief filed in the trial court on May 20, 2004, expressly incorporated the Rule 30(a) motion. (Docket Entry # 9, Ex. 2, p. A. 102). The Rule 30 motion additionally evidences the incorporation of the prior Rule 30(a) motion for unlawful restraint inasmuch as the conclusion parrots the language of Rule 30(a).[14]

■ The trial court denied the Rule 30 motion on December 23, 2005. On October 23, 2006, the appeals court affirmed the denial. The SJC denied the ALOFAR on December 20, 2006. Petitioner filed the present petition approximately four

months later. The one year statute of limitations in the AEDPA is therefore not a bar to the petition.

## II. *Exhaustion*

Respondent submits that petitioner failed to present all three grounds in the petition to the SJC on federal constitutional grounds.

■ Exhaustion, a matter of comity, requires the petitioner to fairly present "'the substance of his federal habeas claim to the state court before seeking federal review.'" *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir.1988). The burden the petitioner bears in fairly and recognizably presenting the factual and legal bases of his federal claim to the state courts is "heavy." *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir.1997); *see Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir.1994) ("a petitioner must inform the state court of both the factual and legal underpinnings of the claim"). Petitioner must not only present the factual and legal underpinnings of the federal claim to the state's highest court, *Adelson v. DiPaola*, 131 F.3d at 263; *Mele v. Fitchburg District Court*, 850 F.2d 817, 820 (1st Cir.1988); *Burbank v. Maloney*, 47 F.Supp.2d 159, 161 (D.Mass.1999), i.e., the SJC, but he must do so "'in such a way as to make it probable that a reason-

---

13. It is also worth noting that the memorandum in support of the Rule 30(a) motion conformed to the requirement that the ground for relief in a Rule 30(a) motion allege a violation of the "Constitution or laws of the United States or of the Commonwealth of Massachusetts." Mass. R.Crim. Proc. 30(a); *see generally Voravongsa v. Wall*, 349 F.3d 1, 6 (1st Cir.2003) (interpreting Rhode Island law). In the captioned sections of the Rule 30(a) memorandum, petitioner argues that his commitment "violates his constitutional rights to due process and equal protection of the law." (Docket Entry # 9, Ex. 2, pp. A. 47–48).

14. Specifically, the conclusion asserts that petitioner "is imprisoned or restrained of his liberty pursuant to a criminal conviction, confinement or restraint that was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts." Rule 30(a) similarly states that, "Any person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file" a motion requesting release "upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts." Rule 30(a), Mass. R.Crim. P.

able jurist would have been alerted to the existence of the federal question.'" *Casella v. Clemons*, 207 F.3d 18, 20 (1st Cir. 2000).

 The federal claim or "question must be plainly defined." *Martens v. Shannon*, 836 F.2d at 717. The correct focus "is one of probability; the trappings of a federal claim must be likely to put a reasonable jurist on notice of the claim." *Casella v. Clemons*, 207 F.3d at 21. Such "'trappings,'" *Adelson v. DiPaola*, 131 F.3d at 262, include: "'(1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such a manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular right specifically guaranteed by the Constitution.'" *Scarpa v. DuBois*, 38 F.3d at 6 (quoting *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir.1987)). Merely alleging lack of a fair trial or invoking the phrase "due process" without further explanation will not satisfy the fourth trapping without further specificity. *See Nadworny v. Fair*, 872 F.2d 1093, 1097 (1st Cir.1989); *see also Adelson v. DiPaola*, 131 F.3d at 263 ("we have regularly held … that the mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not" constitute fair presentment). The fewer the trappings, the lower the probability that the petitioner will have alerted the reasonable jurist to the presence of a federal claim. *See Adelson v. DiPaola*, 131 F.3d at 262.

 Furthermore, "Setting forth the factual underpinnings of a claim, is insufficient, in and of itself to constitute fair presentment of that claim." *Adelson v. DiPaola*, 131 F.3d at 262. Rather, petitioner "must also elucidate the legal foundation of his federal claim." *Adelson v. DiPaola*, 131 F.3d at 262. Thus, fair presentation of a due process claim does not result in a fair presentation of an equal protection claim even if both claims are based on the same facts.

 Grounds one and three of the petition assert violations of petitioner's equal protection rights under the federal Constitution. Examining the ALOFAR, it did not expressly refer to an equal protection claim or cite federal cases raising such a claim. The single reference to "the United States Constitution" did not appear in the context of an unequal treatment or classification argument. (Docket Entry # 9, Ex. 2, § 1). The other reference to the United States Constitution identified "due process rights under the Fourteenth Amendment" as opposed to equal protection rights. (Docket Entry # 9, Ex. 2, § 4).

 That said, exclusive focus on the ALOFAR is not always appropriate. *See Barresi v. Maloney*, 296 F.3d 48, 55 (1st Cir.2002). Thus, where "it cannot be said that the petitioner has abandoned his or her federal claims on appeal to the SJC," the court should consider the "lower court filings as a 'backdrop'" to the ALOFAR. *Barresi v. Maloney*, 296 F.3d at 52–53 n. 1. Conversely, if a petitioner clearly abandoned a federal claim advanced in the lower appellate or trial courts, then it is entirely appropriate to limit the exhaustion inquiry to the ALOFAR. *See Barresi v. Maloney*, 296 F.3d at 52–53 & n. 1; *Mele v. Fitchburg District Court*, 850 F.2d at 823. The court's primary focus remains on the ALOFAR. *Barresi v. Maloney*, 296 F.3d at 52.

In *Barresi*, the First Circuit reversed the district court's finding of no exhaustion. The minimal showing of exhaustion in *Barresi*, *see Barresi v. Maloney*, 296 F.3d at 55 ("Barresi met, albeit minimally, the exhaustion requirement"), is stronger than petitioner's showing of exhaustion. Petitioner makes no mention of equal protection in the ALOFAR, the appeals court brief or the motion for post conviction

relief.[15] In comparison, the ALOFAR in *Barresi* "assert[ed] that, as a consequence of the challenged trial court rulings, Barresi's right to due process was infringed." *Barresi v. Maloney*, 296 F.3d at 54–55.

The appeals court brief, the motion for post conviction relief and the ALOFAR also rely on state court cases and primarily focus upon *Commonwealth v. Desroches*, 27 Mass.App.Ct. 866, 545 N.E.2d 64 (1989), and *Commonwealth v. Godfroy*, 420 Mass. 561, 650 N.E.2d 1273 (1995). *Desroches*, in turn, passingly refers to "claims of double jeopardy and other constitutional violations," *Commonwealth v. Desroches*, 545 N.E.2d at 66. *Godfroy*, however, includes equal protection and due process claims. *Commonwealth v. Godfroy*, 650 N.E.2d at 1275. In comparison, *Barresi*'s ALOFAR invoked state decisional authority that more clearly addressed the "federal constitutional character of issues [Barresi] sought to litigate." *Id.*

It is true that petitioner raised the present equal protection claims in grounds one and three in the Rule 30(a) motion for release from unlawful restraint. It is also true that the ALOFAR and the motion for post conviction relief incorporate the Rule 30(a) motion. Notably, however, the two filings incorporate the Rule 30(a) motion only to allege that the sentencing and "his subsequent SDP commitment was in violation of his *due process* rights under the Fourteenth Amendment to the United States Constitution." (Docket Entry # 9, Ex. 2, p. A. 102; Docket Entry # 9, Ex. 6, § 4) (emphasis added). The appeals court

brief does not mention the Rule 30(a) motion except to note, incorrectly, the June 2001 filing when setting out the procedural history.[16] The appeals court brief also fails to allege a violation of equal protection. Instead, like the motion for post conviction relief and the ALOFAR, the appeals court brief refers only to an alleged deprivation of "due process rights," a claim which petitioner does not bring in the present petition.

In light of the foregoing, petitioner fails to show exhaustion of state court remedies with respect to the equal protection claims in grounds one and three. As to ground two, petitioner concedes that he did not previously present the claim to a state court "because I had no idea that I was committed using the same evidence at my sentencing." (Docket Entry # 1, ¶ 13). Inasmuch as petitioner did not fairly present grounds one, two or three to the SJC, he has not exhausted his state court remedies.

Nevertheless, state court remedies must be "available" within the meaning of section 2254(b)(1)(A). *See Evicci v. Commissioner of Corrections*, 226 F.3d 26, 27 (1st Cir.2000). The exhaustion doctrine codified in the AEDPA reflects the futility exception and allows consideration of the petition where: "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."[17] 28 U.S.C. § 2254(b)(1)(B).

The First Circuit in *Evicci* found that the petitioner lacked "available" state

---

15. As previously explained, *see* fn. 9, the ALOFAR incorporates the previously filed Rule 30(a) motion, the motion for post conviction relief and the appeals court brief albeit only to argue a violation of petitioner's due process rights.

16. The appeals court brief presumably refers to the motion to amend the Rule 30(a) motion. (Docket Entry # 9, Ex. 2, p. A. 35).

17. As expressed by the Supreme Court prior to the AEDPA's enactment, "in determining whether a remedy for a particular constitutional claim is 'available,' the federal courts are authorized, indeed required, to assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim." *Harris v. Reed*, 489 U.S. 255, 268, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

court remedies because, citing *Commonwealth v. Gagliardi,* 418 Mass. 562, 638 N.E.2d 20 (1994), Massachusetts courts "deem grounds not raised on the direct appeal to have been waived." *Evicci v. Commissioner of Corrections,* 226 F.3d at 27. As noted by the SJC in *Gagliardi,* "The rule of waiver 'applies equally to constitutional claims which could have been raised, but were not raised on direct appeal or in a prior motion for new trial.'" *Commonwealth v. Gagliardi,* 638 N.E.2d at 22 (citation and internal quotation marks omitted). If petitioner returned to the trial court to raise the unexhausted claims, the court would more than likely consider the claims waived.

■ Where, as here, state court remedies with respect to the claims in grounds one through three are no longer available and, as a result, the petitioner is deemed to have exhausted state court remedies, he is nevertheless barred from raising the federal claims "in a federal habeas corpus proceeding unless he can show cause for the default and prejudice resulting therefrom." *Teague v. Lane,* 489 U.S. 288, 298, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (citing prior Supreme Court case as "applying procedural default rule to claim that had never been raised in state court"); *accord Moore v. Quarterman,* 454 F.3d 484, 497 (5th Cir.2006) ("failure to exhaust may be excused if the petitioner 'can demonstrate cause for the defaults and actual prejudice'"); *Lee v. Crouse,* 451 F.3d 598, 614–615 (10th Cir.2006).

■ Put another way, "if no state court remedy is available for the unexhausted claim" because "resort to the state courts would be futile," then the exhaustion requirement is technically satisfied. *Armstrong v. Iowa,* 418 F.3d 924, 926 (8th Cir.2005). The failure to exhaust, however, "'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Id.; accord Neville v. Dretke,* 423 F.3d 474, 480 (5th Cir.2005) (paraphrasing and quoting *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), "that a procedural default occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred'"); *Thomas v. Gibson,* 218 F.3d 1213, 1221 (10th Cir.2000); *Duvall v. Purkett,* 15 F.3d 745 (8th Cir.1994) (requiring showing of cause and prejudice with respect to futile, unexhausted federal claim); *see Weeks v. Bowersox,* 119 F.3d 1342, 1347 & 1350 (8th Cir.1997); *Alley v. Bell,* 101 F.Supp.2d 588, 613–614 (W.D.Tenn.2000).

■ Thus, where, as here, the petitioner obtains exhaustion "through a procedural default, the habeas petitioner must show cause for that default and prejudice arising therefrom before the federal court may reach the merits of his habeas claims." [18] *Hall v. DiPaolo,* 986 F.2d 7, 10

---

**18.** The rule requiring the last state court to clearly and expressly state that its ruling rests on a procedural default does not apply where the federal "claim was never presented to the state courts." *Teague v. Lane,* 489 U.S. at 299, 109 S.Ct. 1060; *accord Harris v. Reed,* 489 U.S. at 268, 109 S.Ct. 1038 (O'Connor, J., concurring) ("it is simply impossible to 'require a state court to be explicit in its reliance on a procedural default' where a claim raised on federal habeas has never been presented to the state courts at all"). "In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman v. Thompson,* 501 U.S. at 735 n. 1, 111 S.Ct. 2546.

(1st Cir.1993); *see Villot v. Varner,* 373 F.3d 327, 337 (3rd Cir.2004) (same); *Duvall v. Purkett,* 15 F.3d at 747–748. Further, in "rare cases" a federal court may consider the claim absent a showing of cause " 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Hall v. DiPaolo,* 986 F.2d at 10 (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); *see also Murray v. Carrier,* 477 U.S. at 495–496, 106 S.Ct. 2639 (discussing the actual innocence exception to cases where the petitioner fails to meet both cause and prejudice); *Armstrong v. Iowa,* 418 F.3d at 926.

 As to cause, ordinarily the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *accord Burks v. Dubois,* 55 F.3d 712, 716–717 (1st Cir.1995) (citing *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2639); *Magee v. Harshbarger,* 16 F.3d 469, 471 (1st Cir.1994) (quoting *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2639). For example, two such objective impediments consist of "showing that the factual or legal basis for the claim was not reasonably available to counsel or that 'some interference by officials' made compliance impracticable." *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2639 (citations omitted).

No external impediment prevented petitioner from raising the claims in grounds one through three. Petitioner's professed ignorance of the existence of ground two is also unconvincing as means to establish cause. *See Duvall v. Purkett,* 15 F.3d at 748 ("Duvall's alleged ignorance is not an 'external impediment' that caused his procedural default"). Inasmuch as petitioner fails to show cause, this court need not address the prejudice prong. *See Magee v. Harshbarger,* 16 F.3d at 472 (declining to address prejudice prong "[b]ecause the cause and prejudice requirement is conjunctive"); *see also Burks v. Dubois,* 55 F.3d at 716 n. 3 (not addressing prejudice prong because court found no cause).

 Because petitioner cannot present sufficient cause to excuse his failure to file the appeal in a timely manner, *see, e.g., Aparicio v. Artuz,* 269 F.3d 78, 90 (2nd Cir.2001), federal review of the claims in grounds one through three is barred absent a miscarriage of justice. Notwithstanding the absence of cause, a federal habeas court may proceed to address the merits "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. 2639; *see Hall v. DiPaolo,* 986 F.2d at 10 (applying foregoing standard to case involving exhaustion by procedural default). Stated otherwise, "Even absent a showing of cause and prejudice," a federal court "may overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice." *Burks v. Dubois,* 55 F.3d at 717.

Here, petitioner's plea of guilty belies the existence of a miscarriage of justice or actual innocence. A witness identified petitioner's vehicle, all or part of the Maine license plate number and petitioner as the perpetrator. The witness also identified petitioner in the court room at the probable cause hearing as the man who drove the vehicle in which the victim was seated. Petitioner acknowledged that he was driving the vehicle and that the witness was half in and half out of petitioner's vehicle on the night of the incident. Petitioner also acknowledged having the victim place her head on his penis. (Docket Entry # 9, Ex. 2, pp. A. 240, 243–248 & 293).

Petitioner thus fails in his burden of showing a miscarriage of justice. Moreover, the record belies a claim of actual innocence. In light of the foregoing discussion, grounds one through three are not exhausted and procedurally barred from consideration by this court. Because the petition is subject to dismissal on this basis, this court need not address the argument that grounds one and two present purely matters of state law.

### CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[19] that the motion to dismiss (Docket Entry # 6) be **ALLOWED** and that the petition be **DISMISSED**.

See also 233 F.R.D. 67.

**19.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).